UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Universal Grading Service, John
Callandrello, Joseph Komito and Vadim
Kirichenko, individually and on behalf
of others similarly situated,

                    Plaintiffs,            08-CV-3557 (CPS)

   - against -

                                        MEMORANDUM OPINION

eBay, Inc., American Numismatic         AND ORDER
Association, Professional Numismatists
Guild, Inc., and Barry Stuppler &
Company, LLC,

                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

    Plaintiffs Universal Grading Service ("USG"), John

Callandrello, Joseph Komito and Vadim Kirichenko commenced this

putative class action[1] on August 29, 2008 against defendants

eBay, Inc. ("eBay"), American Numismatic Association ("ANA"),

Professional Numismatists Guild, Inc. ("PNG"), and Barry Stuppler

---

    [1] Plaintiffs describe two putative classes in their Second Amended
Complaint ("SAC").  The first class includes "all companies and individuals
who provide coin grading services on [sic] the market for coin auctions to the
public at large and who have not been certified by eBay as 'the authorized
grading company' pursuant to eBay's Counterfeit Currency and Stamps policy and
who are interested in pursuing this lawsuit."  SAC ¶ 82.  The class period is
from January 2004 to the present.  *Id.* ¶ 83.  The second class includes "all
U.S. based eBay account holders who utilized coin grading services to sell
coins on eBay to the public at large which have not been certified by eBay as
'the authorized grading companies' pursuant to eBay's Counterfeit Currency and
Stamps policy and who, as a result, have not been able to list their coins on
eBay as 'certified' and who are interested in pursuing this lawsuit."  *Id.*
¶ 92.  The class period for the second class runs from the date on which eBay
instituted its Counterfeit Currency and Stamps policy to the present.  *Id.*
¶ 93.

- 2 -

& Company, LLC ("Stuppler Co.").[2]  Plaintiffs allege that
defendants committed antitrust violations of the Sherman Act, 15
U.S.C. §§ 1 and 2, and the Donnelly Act, N.Y. Gen. Bus. Law §
340, and assert New York common-law claims for civil conspiracy
and trade libel.  They seek damages, preliminary and permanent
injunctive relief, and attorney's fees and costs.  Presently
before this Court are defendants' motions to dismiss plaintiffs'
Second Amended Complaint ("SAC") pursuant to Rules 12(b)(2) (lack
of personal jurisdiction), 12(b)(3) (improper venue), and
12(b)(6) (failure to state a claim) of the Federal Rules of Civil
Procedure, and, in the alternative, to transfer venue pursuant to
28 U.S.C. § 1404(a), as well as plaintiffs' motion to strike
certain documents and arguments from the record.  For the reasons
set forth below, this action is transferred to the United States
District Court for the Northern District of California.

## BACKGROUND

The following facts are drawn from the SAC, as well as the
parties' affidavits and exhibits filed in connection with this
motion.  For the purposes of this motion, the facts alleged in
the SAC are taken as true.

Plaintiff UGS is a limited liability company organized and
operating under the laws of New Jersey and maintaining its

---

[2] To date, defendant Stuppler Co. has not entered an appearance in this
action.

- 3 -

principal place of business there.  SAC ¶ 2.  Plaintiff UGS is in the business of grading coins.  *Id.*  Plaintiff Callandrello is the president of UGS, as well as a shareholder in the company. *Id.* ¶ 3; Declaration of John Callandrello dated April 24, 2009, at ¶ 2.  Plaintiffs Komito and Kirichenko are individual coin dealers residing in New Jersey and New York, respectively, who engage in the business of buying and selling coins in forums including, but not limited to, the Internet via defendant eBay. *Id.* ¶¶ 4-5.

Defendant ANA is a federally chartered not-for-profit Internal Revenue Code § 501(c)(3) entity that acts as "the preeminent trade association in the numismatic hobby and the multi-billion dollar industry associated with the numismatic hobby."  *Id.* ¶ 6.  ANA's members are coin collectors, many of whom are sellers of certified coins in online auction market. *Id.* ¶ 7.  ANA's official grading service, to which "active ANA members may submit coins for grading directly," is NGC, one of eBay's authorized graders.  *Id.* ¶ 70.  ANA maintains its headquarters in Colorado, but has members throughout the United States and does business in New York.  *Id.* ¶ 6.  At all relevant times, Barry S. Stuppler was a member of defendant ANA's Board of Governors, Chairman of the ANA's Consumer Protection Committee, and is currently the President of defendant ANA.  *Id.*

- 4 -

Defendant PNG is a foreign corporation that "consists of coin dealers" and does business throughout the United States. *Id.* ¶¶ 9-11.  PNG maintains a website at www.pngdealers.com, which is accessible to Internet users in New York.  *Id.* ¶ 10.  In addition, defendant PNG has about 20 coin dealers located in New York, which are listed on its website as PNG dealers.  *Id.* ¶ 12. These 20 coin dealers are all representatives or agents of PNG. *Id.*

Defendant Stuppler Co., a company based in California, represents on its website that it facilitates coin sales and purchases, including via defendant eBay.  *Id.* ¶¶ 15-16. Defendant Stuppler Co. also sells certified coins on eBay and represents on its website that it has been an "eBay power seller" for over five years.  *Id.* ¶ 16.  Stuppler Co. is a member of several grading services, as well as a member and/or director of defendant PNG and founder of the PNG "Internet rules committee." *Id.* ¶ 17.

Defendant eBay is a foreign corporation that provides a forum for the purchase and sale of merchandise, including coins, over the Internet.  *Id.* ¶ 18.  At all relevant times, plaintiffs UGS and Callandrello have graded coins that were bought and sold over eBay, or bought and sold coins on eBay as a substantial part of their business activities.  *Id.* ¶ 18.  There have been no

- 5 -

customer complaints about the authenticity of coins graded by plaintiff UGS and listed on eBay.  *Id.* ¶ 24.

In 2001, defendant PNG formed a group known as the "Internet rules committee," which is composed of coin industry insiders including the following:  Barry Stuppler, in his capacity as then-ANA Governor and chairman of the ANA Consumer Protection Committee; Doug Winter, a PNG dealer; and R. Steven Ivy, a Principal of Heritage Solution, one of the largest coin auctioneers in the United States.  *Id.* ¶ 25.  According to plaintiffs, from 2001-2004, a primary purpose of the "Internet rules committee" was "to interfere with and obstruct the ability" of smaller coin grading services, including plaintiff UGS, to participate in the then-burgeoning coin marketplace on eBay.  *Id.* To this end, the "Internet rules committee" formally and informally accused plaintiffs of selling counterfeit coins and otherwise engaging in fraudulent conduct.  *Id.*

In 2004, defendants ANA and eBay officially formed the "Coins Community Watch group" (the "CCW"), describing it as "a collaborative effort among a team of [h]obby experts, the ANA, and eBay for the purpose of combating misrepresented or fraudulent listings involving coins and other numismatic items." *Id.* ¶ 26; *see also id.* Ex. B at 1 (ANA Consumer Awareness publication dated April 2006 including citation).  The industry experts of which the CCW was composed included the same

individuals that made up the "Internet rules committee." *Id.*
¶ 29.  An ANA publication describes CCW procedure as follows: (1)
CCW experts or members of the eBay community submit reports of
potentially fraudulent or misrepresented listings to the CCW; (2)
reports corroborated by two or more CCW experts are submitted to
the ANA for further review; (3) the ANA verifies the claims and
tries to resolve the issues with the sellers; (4) unresolved
issues are referred to eBay for an appropriate remedy.  *Id.* Ex. B
at 2.  On August 30, 2004, defendant eBay conducted a workshop
entitled the "Coins Community Watch Program," in which it
described the CCW program in a similar manner.  *Id.* ¶¶ 27-28.

In 2006, defendant PNG, in conjunction with the Industry
Council for Tangible Assets ("ICTA") and led by defendant
Stuppler Co., commissioned a survey of rare coin authentication
and grading services.  *Id.* ¶ 30.  The survey respondents were
asked for their professional opinions of 11 grading services
based on 12 different, weighted criteria, such as grading and
authentication accuracy.  *Id.*  The survey results were publicized
on defendant PNG's website, defendant ANA's website, defendant
Stuppler Co.'s website, and elsewhere.  *Id.*  Smaller, more
economical coin grading services, like plaintiff UGS, were
deliberately excluded from the survey by defendant PNG, whose
members were aware that such exclusion would have an adverse
economic effect on such companies and their dealers.  *Id.*  Small

- 7 -

coin grading services like plaintiff UGS were never referenced in the survey. *Id.* ¶ 31.

On September 17, 2007, defendant eBay, "in complicity with" defendants ANA and PNG, promulgated a new policy that created standards under which coins sold via eBay may be listed as "certified" coins (the "Policy"). *Id.* ¶ 33.  The Policy was enacted pursuant to defendant ANA's recommendations and was based on, among other things, the 2006 coin grading survey commissioned by defendant PNG and spearheaded by defendant Stuppler Co.  *Id.* ¶ 39.  The Policy permits only coins that have been graded by one of five "approved" grading services (referred to by plaintiffs as "NGC, NCS, PCGS, ICG, and ANACS") to be listed for sale on eBay as "certified" coins.  *Id.* ¶ 34.  In addition, under the Policy, defendant eBay designated coins that were not graded by the "approved" grading services as "counterfeit."  *Id.* ¶ 35. Therefore, under the Policy, coins graded by plaintiff UGS and other small grading companies cannot be listed or sold on eBay as "certified" coins and are referred to as "counterfeit" by defendant eBay.  *Id.* ¶ 36.  According to plaintiffs, the policy reflects input from "big" coin grading companies faced with the challenge of competing with smaller coin grading companies like plaintiff UGS.  *Id.* ¶ 43.  Plaintiffs also allege that the Policy "arose from a history of prejudice and animosity on the part of Defendant ANA (led by Barry Stuppler and PNG (led by Barry

- 8 -

Stuppler and Ivy) against smaller grading services like Plaintiff
UGS." *Id.* ¶ 51.

On September 18, 2007, defendant ANA publicly announced the
new Policy in a press release that was published and remains
posted on its website. *Id.* ¶¶ 40, 47; *see also id.* Ex. F (copy
of press release). Defendant ANA prefaced the identification of
the grading services qualifying for the certified classification
(which did not include plaintiff UGS) by defining consumer fraud
as involving a seller's "desire, ability, and opportunity." *Id.*
Defendant ANA then stated that the new eBay/ANA/PNG Policy was an
effort to "try to remove the opportunity" to commit consumer
fraud. *Id.* The press release contains a link to the 2006
grading services survey, which does not elicit any opinion as to
plaintiff UGS. *Id.* ¶ 48.

After the institution of the Policy, coin sellers like
plaintiff Komito who utilized eBay to list coins not graded by
"approved" grading services were notified directly by defendant
eBay that their listed products had been "removed because [they]
violated the eBay Counterfeit Currency and Stamps policy. . . .
eBay does not permit the sale of currency that is improperly
described, fraudulent or counterfeit." *Id.* ¶¶ 36, 44. The
subject line of defendant eBay's emails to these third-party
dealers states: "eBay Listing Removed: Counterfeit Currency and
Stamps." *Id.* ¶¶ 36, 41; *see also id.* Ex. D (copy of October 13,

- 9 -

2007 email from defendant eBay to coin dealer who attempted to list a coin graded by plaintiff UGS bearing cited subject line). Bidders on removed listings are also notified of the listing's cancellation for violation of the Policy. *Id.* ¶¶ 44-45. Plaintiff UGS's listings disclose that UGS is the grading entity for the advertized coin(s), and bidders on cancelled UGS listings are therefore on notice that the cancelled listings relate to coins graded by plaintiff UGS. *Id.* ¶ 49.

According to plaintiffs, the "certified" designation is critical in the market for numismatics. *Id.* ¶ 45. Plaintiffs allege that the Policy has already caused defendant eBay's customers to assume that dealers who use plaintiff UGS's services trade in counterfeit coins, thereby harming plaintiffs by making it less likely that customers will purchase UGS-graded coins and less likely that dealers will send coins to UGS for certification for fear that their auctions will be cancelled. *Id.; see also id.* Ex. E (eBay discussion thread dated October 10, 2007, in which one poster criticizes the policy because it "distorts [the] marketplace by implying that 'everything' in the approved slabs[3] is the truth and 'nothing' in the non-approved slabs is true").

---

[3] A "slab" is "an archival plastic holder used for encapsulating coins . . . issued by grading services for coins that can be graded and assigned a numeric value. The slab has the date, grade, mintmark, issuing service name and ID, quality and any special notes such as PL for 'ProofLike.'" *See* Dictionary of Terms Used in Numismatics & Coin Collecting, *available at* http://www.coinresource.com/guide/dictionary2.htm (last visited Mar. 12, 2009).

- 10 -

Plaintiffs Komito and Kirichenko possess thousands of coins graded by plaintiff UGS and other "unauthorized" grading companies that cannot now be sold on eBay.  *Id.* ¶ 46.  Since enactment of the Policy, plaintiff Komito has lost all of his United States customers and sustained a pecuniary loss of $300,000.  *Id.* ¶¶ 186-87.  In the same period, plaintiffs UGS and Callandrello have suffered substantial pecuniary harm, lost valuable customers, and seen a general diminution in business.  *Id.* ¶ 53.  Their business reputations have also suffered.  *Id.* ¶ 180.

Prior to defendant eBay's September 17, 2007 enactment of the "Policy," a previous policy was in place under which coin dealers trading coins graded by plaintiff UGS were favored sellers on eBay.  *Id.* ¶ 52.  Under the previous policy, plaintiff UGS listed its coins on eBay without authenticity complaints or other incident for almost three years.  *Id.*  Over 5,000 of plaintiff UGS's coins were listed on eBay by an individual named Paul Reine, and were not the subject of any customer complaints.  *Id.*  Mr. Reine had a 99.8% positive feedback rate with respect to UGS-graded coins sold on eBay.  *Id.; see also id.* Ex. G (copy of Paul Reine's eBay feedback page).

Plaintiffs allege that the eBay Policy "harms the competition in the relevant market -- the market for all online auctions of certified coins [in the United States]."  *Id.*

- 11 -

¶¶ 38, 67.  According to plaintiffs, the market for online
auctions of certified coins is "virtually the only possible way
for traders of certified coins to successfully introduce their
product to public," and "eBay has a monopoly in the market for
on-line auctions in the United States."  *Id.* ¶¶ 68, 72.
Plaintiffs allege that the policy harms competition in the
relevant market "by prohibiting consumers and dealers from
purchasing or dealing in certified coins graded by any coin
grading service except for the ones listed in eBay's policy."
*Id.* ¶¶ 37, 42.  According to plaintiffs, defendants' conduct has
"reduced output in the market for online auctions of certified
coins" and has "caused [an] increase in current and future prices
for certified coins, to the detriment of customers, and [has]
thereby reduced customer demand for certified coins."  *Id.* ¶ 75.
In addition, it has "allowed five authorized graders to maintain
market power (collectively to control virtually 100% share) in
the market for the sale of certified coins."  *Id.* ¶ 79.  Absent
defendants' conduct, plaintiffs allege that they would be able to
participate in the relevant market, which "would force the five
authorized graders to improve their own cost structures and
performance."  *Id.* ¶ 76.

Plaintiffs commenced this action by filing their initial
complaint on August 29, 2008.  On February 6, 2009, defendants
ANA, PNG, and eBay moved to dismiss the First Amended Complaint

- 12 -

("FAC").  On February 24, 2009, plaintiffs moved for leave to amend the FAC, and on April 1, 2009, I granted leave to file the SAC and permitted the moving defendants to file additional letter briefs addressing the new allegations in the SAC.

**DISCUSSION**

I.   Jurisdiction

Of the defendants, only defendant PNG has moved to dismiss the claims against it for lack of personal jurisdiction.[4] Because the defense of lack of personal jurisdiction is waived if not timely asserted, *see Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 704 (1983) (noting that unlike subject matter jurisdiction, the failure to raise personal jurisdiction is waived if not timely raised in an answer or responsive pleading), I need only determine whether I have personal jurisdiction over defendant PNG.

A.   *Standard for Motion to Dismiss for Lack of Personal Jurisdiction*

"The requirement that federal courts have personal jurisdiction over the litigants before them arises from an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."  *Arar v. Ashcroft*, 532 F.3d 157, 173 (2d Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471

_____

[4] None of the parties dispute that I have subject matter jurisdiction over this action, as it arises under the federal antitrust laws.

- 13 -

U.S. 462, 471-72 (1985)) (internal quotation marks omitted).  In
opposing a motion to dismiss for lack of personal jurisdiction,
"the plaintiff bears the burden of showing that the court has
jurisdiction over the defendant." *Kernan v. Kurz-Hastings, Inc.*,
175 F.3d 236, 240 (2d Cir. 1999) (internal citation omitted).
However, prior to discovery, the plaintiff need only make a *prima
facie* showing of jurisdiction.  *See Jazini v. Nissan Motor Co.*,
148 F.3d 181, 184 (2d Cir. 1998).

"[A] prima facie showing of jurisdiction . . . means that
plaintiff must plead facts which, if true, are sufficient in
themselves to establish jurisdiction." *Bellepointe, Inc. v.
Kohl's Dep't. Stores, Inc.*, 975 F.Supp. 562, 564 (S.D.N.Y. 1997).
"Eventually, of course, the plaintiff must establish jurisdiction
by a preponderance of the evidence, either at a pretrial
evidentiary hearing or at trial.  But until such a hearing is
held, a prima facie showing suffices, notwithstanding any
controverting presentation by the moving party, to defeat the
motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904
(2d Cir. 1981).  A court addressing a 12(b)(2) motion may
consider matters outside the pleadings, and the complaint and any
affidavits are to be construed in the light most favorable to the
plaintiff.  *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.
1997).

- 14 -

District courts resolving issues of personal jurisdiction engage in a two-part analysis. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). First, courts consider the application of state law, as "personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits[.]" *Kronisch v. U.S.*, 150 F.3d 112, 130 (2d Cir. 1998) (citation omitted). Second, the court "must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Bank Brussels*, 171 F.3d at 784 (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). Due process requires that an out-of-state defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal citation omitted).

If the plaintiff fails to make the requisite showing, the court may dismiss the claims against the defendant(s) over which it lacks personal jurisdiction pursuant to Rule 12(b)(2). In addition, the Second Circuit has held that a district court also has the "power to transfer venue even it if lacks personal jurisdiction over defendants," if the requirements of the governing statute, 28 U.S.C. § 1404(a), are met. *Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 113 (2d Cir. 2001) (citing

- 15 -

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)).

B.    *Whether Personal Jurisdiction Comports with State Law*

    1.    *Whether PNG "Transacted Business" in New York*

    Plaintiffs first allege that personal jurisdiction over
defendant PNG exists because defendant PNG allegedly transacts
business in New York, which is a ground under New York law for
extending long-arm personal jurisdiction.[5]  A foreign domiciliary
like defendant PNG "transacts business" under § 302(a)(1) when it
"'purposefully avails itself of the privilege of conducting
activities within [New York], thus invoking the benefits and
protections of its laws.'"  *McKee Elec. Co. v. Rauland-Borg
Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967) (quoting *Hanson v.
Denckla*, 357 U.S. 235, 253 (1958)).  Whether a defendant engaged
in purposeful activity within New York depends on the totality of
the circumstances.  *See Sterling Nat'l Bank & Trust Co. v.
Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975).  A
single purposeful action directed at New York is sufficient, as

---

    [5] New York State's long-arm statute states, in pertinent part, that
personal jurisdiction is permitted over a non-domiciliary who, in person or
through an agent:
        (1) transacts any business within the state or contracts anywhere to
            supply goods or services in the state; or
        (2) commits a tortious act within the state . . . ; or
        (3) commits a tortious act without the state causing injury to person or
            property within the state . . . if he
            (i) regularly does or solicits business, or engages in any other
            persistent course of conduct, or derives substantial revenue from
            goods used or consumed or services rendered, in the state, or
            (ii) expect or should reasonably expect the act to have
            consequences in the state and derives substantial revenue from
            interstate or international commerce; or
        (4) owns, uses or possesses any real property situated within the state.
N.Y. C.P.L.R. 302(a).

- 16 -

long as it bears a substantial relationship to the cause of
action. *Bank Brussels*, 171 F.3d at 787 (citing *Parke-Bernet*
*Galleries, Inc. v. Franklyn*, 256 N.E.2d 506, 507 (N.Y. 1970)).
The defendant need not enter New York to be viewed as transacting
business in the state. *Kreutter v. McFadden Oil Corp.*, 522
N.E.2d 40, 43 (N.Y. 1988). However, a defendant's communication
from another locale with a party in New York is generally not
sufficient to establish personal jurisdiction. *See Beacon*
*Enter., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)
(collecting cases); *Slapshot Beverage Co. v. S. Packaging Mach.,*
*Inc.*, 980 F.Supp. 684, 687 (E.D.N.Y. 1997). Courts interpreting
§ 302(a)(1) have long held that there must be a close connection
between the cause of action and the forum contacts allegedly
maintained by the non-domiciliary. *See, e.g.*, *Beacon Enter.*, 715
F.2d at 763-64 (2d Cir. 1983) (there must be "substantial
relationship" between transaction of business and instant cause
of action).

Plaintiffs argue that defendant PNG transacts business in
New York through its website, www.pngdealers.com. "Depending on
their nature, a defendant's contacts with New York via the
internet can provide a basis for jurisdiction under section
302(a)(1)." *Knight-McConnell v. Cummins*, No. 03 Civ. 5035, 2005
WL 1398590, at *2 (S.D.N.Y. June 13, 2005) (citation omitted).
In assessing whether a defendant's online activities come within

- 17 -

the meaning of § 302(a)(1), courts examine "the nature and quality of commercial activity that [a defendant] conducts over the internet."  *Id.* (quoting *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997)).  The *Knight-McConnell* court characterized this inquiry as follows:

> Courts have identified a spectrum of potential website contacts with a forum state, ranging from "passive" websites, which merely display information and therefore are unlikely to support jurisdiction, to websites which clearly allow defendant to transact business in the forum state over the internet, and thus sustain jurisdiction.  In the middle of the spectrum are interactive websites that allow the exchange of information between users in the forum state and the defendant, and which may be a basis for jurisdiction depending on the level and the nature of the exchange.  When a case only involves online postings of information, rather than commercial transactions, it is unlikely that jurisdiction will be appropriate. . . . Instead, jurisdiction will lie only if the posting is intended to target or focus on internet users in the state where the cause of action is filed.

*Id.* at *2-3 (internal citations and quotation marks omitted).

In arguing that defendant PNG transacts business in New York via its website, plaintiffs rely on the following allegations: (1) PNG's website is accessible to every internet-connected computer in New York (and indeed, worldwide); (2) on its website, PNG lists approximately 20 PNG coin dealers based in New York; (3) on its website, PNG invites potential dealers to join it, specifically by inviting visitors to contact a PNG representative at PNG headquarters at a specific phone number and/or email address, and by providing a downloadable membership application; (4) PNG's website "allows its visitors to communicate with the

- 18 -

[sic] PNG's host computer"; and (5) on its website, PNG invites
visitors to join PNG's email list.  *See* SAC ¶¶ 10-14.

Even when viewed together in the light most favorable to
plaintiffs, plaintiffs' allegations do not show that defendant
PNG's website "clearly allow[s] defendant to transact business"
in New York.  Nor do the allegations show that defendant PNG's
website is more than minimally interactive.  The only way in
which plaintiffs allege that website visitors may exchange
information with defendant PNG online is by providing PNG with
their email addresses, which allows them to receive PNG's
newsletter.  Other than permitting this modest interaction, PNG's
website merely informs visitors of how to contact PNG via
telephone or postal mail.  In addition, plaintiffs have alleged
no facts permitting an inference that PNG's website specifically
targets New York residents.  Under these circumstances, defendant
PNG's website activity does not rise to the level of transacting
business in New York within the meaning of § 302(a)(1).[6]  Because

---

[6] In support of its argument that PNG transacted business via its
website, plaintiffs cite a number of cases in which courts determined that
they had personal jurisdiction under § 302(a) based on a defendant's website.
Several of these cases involve different subsections of § 302(a), however,
such as the "tortious act" subsections, which have different requirements and
standards for a finding of personal jurisdiction than the "transacting
business" subsection at issue here and are therefore distinguishable.  *See,
e.g.*, *Starmedia Network, Inc. v. Star Media, Inc.*, No. 00 CIV 4647, 2001 WL
417118 (S.D.N.Y. Apr. 23, 2001) (finding that moderately interactive website
implied that defendant had "used its website to attract and service business
across the nation, including in New York," and that defendant therefore
"should have reasonably expected that its [out-of-state tortious act] would
have consequences in New York").  In addition, the websites considered in the
cases cited by plaintiffs were generally more interactive and commercial in
nature than the website at issue here, and thus are of limited guidance.  *See
Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F.Supp.2d 449, 456 (S.D.N.Y.

- 19 -

I have determined that defendant PNG did not transact business in
New York, I need not consider whether plaintiffs' claims arise
out of an alleged business transaction.

  2.  *Whether PNG's Alleged Tortious Act Confers Personal*
      *Jurisdiction*

     Alternatively, plaintiffs argue that this Court has personal
jurisdiction over defendant PNG because it committed a tortious
act outside New York that caused injury in New York.  Section
302(a)(3) of New York's long-arm statute provides that the Court
may exercise jurisdiction over a non-domiciliary who:

> commits a tortious act without the state causing injury to
> person or property within the state, except as to a cause of
> action for defamation of character arising from the act, if
> he (i) regularly does or solicits business, or engages in
> any other persistent course of conduct, or derives
> substantial revenue from goods used or consumed or services
> rendered, in the state, or (ii) expects or should reasonably
> expect the act to have consequences in the state and derives
> substantial revenue from interstate or international
> commerce[.]

N.Y. C.P.L.R. § 302(a)(3).  Plaintiffs appear to argue that I may
exercise personal jurisdiction over defendant PNG under
§ 302(a)(3) because PNG committed the tort of defamation when it
posted information on its website containing allegedly false and

---

2000) (holding that foreign defendant had transacted business in New York via
its website, where its website "enable[d] the viewer to purchase [products]
online, download an order form, download an application to become an
'independent affiliate', and ask questions of an online representative");
*Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 564 (S.D.N.Y. 2000)
(finding that foreign defendant transacted business in New York where its
website allowed New York customers to apply for loans on the Internet,
electronically "chat" with an online representative, and e-mail questions to
the defendant and receive a rapid response).

- 20 -

misleading statements about plaintiffs and their business, *i.e.*, a description of the 2006 coin grader survey and its results. However, section 302(a)(3) expressly excludes defamation claims from its scope of application. *See, e.g.*, *Guardino v. Am. Sav. & Loan Ass'n of Fla.*, 593 F.Supp. 691, 695 (E.D.N.Y. 1984) ("Section 302(a)(3) . . . explicitly excludes defamation of character from the tortious acts that are a basis for long arm jurisdiction."). Accordingly, plaintiffs have not shown that § 302(a)(3) confers personal jurisdiction over defendant PNG on this Court.

As plaintiffs point out, however, an act of defamation occurring outside of New York may give rise to personal jurisdiction under § 302(a)(1) even though it is specifically excluded from § 302(a)(3). Courts have found personal jurisdiction in cases where a defendant's out-of-state conduct involved defamatory statements projected into New York and causing injury in New York, but only where the conduct involved "much more contact with New York than the mere solicitation of New Yorkers as one aspect of producing the defamatory material." *D'Amato v. Starr*, No. CV-06-2429, 2007 WL 895787, at *1 (E.D.N.Y. Mar. 22, 2007). Rather, "personal jurisdiction over a nondomiciliary defendant in a defamation action has been sustained under CPLR 302(a)(1) where the action arises out of a defendant's transaction of business in New York." *Montgomery v.*

- 21 -

*Minarcin*, 693 N.Y.S.2d 293, 295 (N.Y. App. Div. 1999).

As previously discussed, plaintiffs have failed to show that defendant PNG transacts business in New York via its website. The posting of allegedly defamatory statements on a website, without more, is not a transaction of business within the meaning of § 302(a)(1). "When a case only involves online postings of information, rather than commercial transactions, it is unlikely that jurisdiction will be appropriate." *Knight-McConnell*, 2005 WL 1398590, at *2. "The mere fact that the allegedly defamatory postings may be viewed in New York is . . . insufficient to sustain a finding of jurisdiction." *Best Van Lines v. Walker*, No. 03 Civ. 6585, 2004 WL 964009, at *5 (S.D.N.Y. May 5, 2004). Instead, "jurisdiction will lie only if the posting is intended to target or focus on internet users in the state where the cause of action is filed." *Seldon v. Direct Response Techs*., No. 03 Civ. 5381, 2004 WL 691222 at *4-5 (S.D.N.Y. Mar. 31, 2004). Here, plaintiffs have neither shown that the posting of the allegedly defamatory statements was closely related to a business transaction, nor that the posting was specifically targeted to New York residents. Accordingly, plaintiffs have not shown that personal jurisdiction under § 302(a)(1) exists by virtue of defendant PNG's allegedly defamatory website postings.

3. *Whether Personal Jurisdiction Comports with Due Process*

Having determined that this Court does not have personal

- 22 -

jurisdiction over defendant PNG under New York law, I need not
consider whether exercising such jurisdiction would comport with
federal requirements of due process.  However, for reasons stated
below, in lieu of dismissing plaintiffs' claims against defendant
PNG for lack of personal jurisdiction, I exercise my discretion
to transfer those claims to the Northern District of California.

II.   Venue

Defendant eBay argues that plaintiffs' claims should be
dismissed, or, in the alternative, transferred because they have
brought suit in an improper venue.  Specifically, defendant eBay
argues that plaintiffs Callandrello and Komito are bound by an
agreement (the "User Agreement"), which it alleges any person or
entity registering to use eBay's services must accept by
affirmatively checking a box on the online registration form that
states "I accept the User Agreement and Privacy Policy."
Declaration of David J. Mandella dated May 4, 2009 ("Second
Mandella Decl.") ¶ 2.  The version of the User Agreement
allegedly accepted by plaintiffs Callandrello and Komito[7]

---

[7] There is no dispute that plaintiff UGS never became an eBay user, and
thus never accepted the eBay User Agreement.  In addition, in its reply
papers, defendant eBay withdrew its motion to dismiss or transfer for improper
venue with regard to plaintiff Kirichenko, on the grounds that plaintiff
Kirichenko accepted eBay's user agreement in 2002, when the agreement did not
contain a forum selection clause, and in order "to avoid a long drawn out
pleading battle over whether Kirichenko is bound by the revisions to the User
Agreement."  See Def. eBay Reply (Venue) at 1 n.1.
        According to defendant eBay, plaintiff Callandrello has been a
registered user of eBay's services since at least December 13, 2005, under the
name "jerseyshorecoins."  Second Mandella Decl. ¶ 4.  The e-mail listed in
connection with plaintiff Callandrello's account is ugs.llc@hotmail.com.  Id.
In addition, plaintiff Komito states that he has been "selling . . . coins on

- 23 -

contains a forum selection clause that applies to "any claim or controversy at law or equity that arises out of this Agreement or [eBay's] services ('Claims')" and provides that such claims "shall be resolved in accordance with one of the subsections below or as otherwise mutually agreed upon in writing by the parties." *Id.* ¶ 3; *id.* Ex. A (copy of 2003 User Agreement) ¶ 17. The relevant subsections provide for arbitration, alternative dispute resolution, and litigation, further specifying that claims must be resolved "using the dispute resolution mechanism that is selected in accordance with this Section by the first party to file a Claim." *Id.* Ex. A ¶ 17. The subsection that provides for litigation states that "any Claim may be adjudicated by a court of competent jurisdiction located in Santa Clara County, California or where the defendant is located (in [eBay's] case San Jose, California, and in [the user's] case [the user's] home address or principal place of business). [The user] and eBay agree to submit to the personal jurisdiction of the courts located within the county of Santa Clara, California." *Id.* Defendant eBay alleges that this version of the User Agreement was in force from May 25, 2003 until on or after December 12,

---

eBay for the past ten (10) years." Declaration of Jospeh Komito dated January 15, 2009 (attached as Exhibit K to the FAC) ("Komito Decl.") ¶ 2. According to defendant eBay, while eBay cannot find a record of plaintiff Komito having registered with eBay, plaintiff Komito could not have sold coins on eBay unless he had first registered with eBay and accepted the terms of the User Agreement in force at that time. Declaration of David Mandella dated February 4, 2009 ("First Mandella Decl.") ¶ 8.

- 24 -

2005.  *Id.* ¶ 2.[8]

Based on the User Agreement, defendant eBay argues that when plaintiffs Callandrello and Komito elected to pursue their claims through litigation, they were obliged pursuant the User Agreement's dispute resolution provisions to file their claims in a court located in Santa Clara County, California.  Accordingly, defendant eBay argues that plaintiffs Callandrello and Komito's claims against it should be dismissed for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or in the alternative, transferred to a court in Santa Clara County, California.[9]

---

[8] The User Agreement has been subsequently amended.  In its moving papers, defendant eBay submitted the copy of the User Agreement that was then in force, which states that it "became effective on August 13, 2008, for current users, and upon acceptance for new users.  The previous amendment to this Agreement was effective for all users on July 9, 2007."  First Mandella Decl. Ex. A (copy of then-current User Agreement).  This Court's review reveals the User Agreement has been subsequently amended from the 2008 version initially submitted by defendant eBay.  *See* "Your User Agreement," *available at* http://pages.ebay.com/help/policies/user-agreement.html? (last visited May 11, 2009).  In its most recent submission, however, eBay alleges that "[e]very person who registered to user eBay's services on or after May 25, 2003 agreed to [the dispute resolution provisions contained in the 2003 User Agreement] or substantially identical provisions."  Second Mandella Decl. ¶ 3.
    While at various times in its submissions, defendant eBay argues that the most recent version of the User Agreement should control, plaintiffs dispute this conclusion, and in its Reply, defendant eBay has relied on the 2003 version of the User Agreement in order "to avoid a long drawn out pleading battle over whether [plaintiffs are] bound by the revisions to the [2003] User Agreement[.]"  Def. eBay Reply (Venue) at 1 n.1.  Given my conclusion below that the forum selection clause contained in the 2003 User Agreement is presumptively enforceable with regard to certain plaintiffs and all defendants, I need not determine whether the later versions of the User Agreement control here.

[9] The Second Circuit has declined to designate a single clause of Rule 12(b) under which a party must request dismissal of a suit based on a forum selection clause.  *See Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006) ("The Supreme Court has not specifically designated a single clause of Rule 12(b) as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause, nor have we.") (internal

- 25 -

A.    *Standard for Motion to Dismiss for Improper Venue Based on Forum Selection Clause*

On a Rule 12(b)(3) motion to dismiss for improper venue, the plaintiff bears the burden of making a *prima facie* case by alleging facts which, if true, would support the court's exercise of jurisdiction.  While defendants bring their claim for dismissal pursuant to a forum selection clause as a Rule 12(b)(3) motion, the Second Circuit "has adopted a clear framework for ruling on such claims regardless of the procedural mechanism utilized." *Thibodeau v. Pinnacle FX Inv.*, No. 08-CV-1662, 2008 WL 4849957, at *3 (citing *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006).  This framework consists of a four-part analysis:

> [1] The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.
> [2] The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so.
> [3] Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.  If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.
> [4] The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

---

quotation marks and citation omitted).  However, courts in the Second Circuit routinely consider requests to enforce a forum selection clause via Rule 12(b)(3) motions to dismiss for improper venue. *See, e.g., Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) (affirming dismissal of complaint pursuant to Rule 12(b)(3) based on forum selection clause).

- 26 -

*Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (internal quotation marks and citations omitted).  The moving party must provide evidence sufficient to satisfy the first three factors and establish that the forum selection clause is presumptively enforceable.  *Thibodeau*, 2008 WL 4849957, at *3. The burden then shifts to the non-moving party to make a strong showing that overcomes the presumption of enforceability.  *Id.* at *4.

In considering a 12(b)(3) motion, courts may review materials outside of the pleadings.  *See Jockey Int'l, Inc. v. M/V "Leverkusen Express"*, 217 F.Supp.2d 447, 450-51 (S.D.N.Y. 2002); *J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, 37 F.Supp.2d 186, 189 (E.D.N.Y. 1998).  When analyzing plaintiff's preliminary *prima facie* showing, the facts must be viewed in the light most favorable to the plaintiff.  *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997).  "A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing."  *Id.* (citing *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).  The determination of whether an evidentiary hearing is necessary is within the sound discretion of the district court.  *Stair v. Calhoun*, No. 07-CV-03906, 2009 WL 792189, at *5 (E.D.N.Y. Mar. 23, 2009) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004)).

- 27 -

B.   *Whether Venue is Proper*

In order to make out their *prima facie* case that venue is proper, plaintiffs Callandrello and Komito must allege facts sufficient to show that the forum selection clause does not require dismissal of their claims against defendant eBay.  I consider the four factors relevant to this determination in turn below.

1.   *Reasonable Communication*

The legal effect of a forum selection clause depends upon "whether its existence was reasonably communicated to the plaintiff." *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) (citations omitted).  "A forum selection clause stated in clear and unambiguous language . . . is considered reasonably communicated to the plaintiff in determining its enforceability." *Novak v. Tucows, Inc.*, No. 06-CV-1909, 2007 WL 922306, at *7 (E.D.N.Y. Mar. 26, 2007) (quoting *Vitricon, Inc. v. Midwest Elastomers, Inc.*, 148 F.Supp.2d 245, 247 (E.D.N.Y. 2001)).

Plaintiffs contend that the forum selection clause at issue here was not "reasonably communicated" to them on two principal grounds.  First, plaintiffs argue that the clause was not reasonably communicated to them because they had an inadequate opportunity to review it when they accepted the User Agreement in force at the time they became eBay users by checking a box on the online eBay registration form.  Second, plaintiffs argue that the

- 28 -

forum selection clause was not reasonably communicated to them because it is ambiguous.  Because a clause cannot be "reasonably communicated" if it is ambiguous, I consider plaintiff's second argument first.

Plaintiffs argue that the forum selection clause at issue here is ambiguous because, according to them, it may be interpreted to preclude federal jurisdiction, and plaintiffs here have unquestionably brought claims arising under federal law.  As set forth above, the 2003 User Agreement provides that "any Claim may be adjudicated by a court of competent jurisdiction located in Santa Clara County, California or where the defendant is located[.]"  The federal district into which Santa Clara County falls is the Northern District of California.  Although that district's headquarters are located in San Francisco, the court also hears cases in its courtroom in San Jose, which is located within Santa Clara County.[10]  Plaintiff argues that because "the Northern District of California also includes other counties apart from Santa Clara, the forum selection clause excludes the jurisdiction of the Federal Court and obligates Plaintiffs whose claims arose out of violations of federal laws to bring their action in state court[.]"  Pl.'s Mem. In Opp. (Venue) at 11.  Plaintiff cites no caselaw in support of this improbable

---

[10] *See* http://www.cand.uscourts.gov/ (click on "FAQs" and "Jurisdiction Map") (last visited on May 12, 2009).

- 29 -

argument, and I find that it is without merit.  While it is true

that the forum selection clause does not specify whether claims

may be brought in federal or state court, it clearly states that

they may be brought in Santa Clara County, which in this case is

also "where the defendant is located," and a federal district

court sits in Santa Clara County.  The fact that a forum

selection clause allows for claims to be brought in federal or

state courts within a specific locale does not necessarily render

the clause ambiguous.  *See Mooney-Kelly v. Islands Pub. Co.*, No.

01 CIV. 4448, 2002 WL 109533, at *3 (S.D.N.Y. Jan. 28, 2002) (in

an agreement containing a mandatory forum selection clause

providing for sole jurisdiction in Santa Barbara, California,

"[t]he fact that the provision does not specify federal or state

court does not make it invalid, but rather allows suit to be

brought in either court.").[11]  In this case, the forum selection

clause is only susceptible of the interpretation that claims

against eBay may be brought in any court of competent

jurisdiction in Santa Clara County, and therefore, in either

state or federal court.  *C.f. City of N.Y. v. Pullman Inc.*, 477

---

[11] The caselaw cited by plaintiffs in support of their argument is
inapposite.  In *ORI, Inc. v. Lanewala*, No. 99-2402, 1999 WL 1423068 (D. Kan.
Nov. 30, 1999), the court considered a forum selection clause that, on its
face, referred to a municipal court that plainly was without jurisdiction to
decide the case.  In another case cited by plaintiffs, *BP Marine Am. v.
Geostar Shipping Co. N.V.*, Civ. A. No. 94-2118, 1995 WL 131056 (E.D. La. Mar.
22, 1995), the court considered a forum selection clause that appeared to
designate a forum that does not exist.  Neither set of circumstances is
present here.

- 30 -

F.Supp. 438 (S.D.N.Y. 1979) (finding that where clause selected
"New York courts" as the forum, the term "New York courts" was
susceptible of meaning both federal and state courts located in
New York or of meaning only New York State courts, and because
more than one interpretation of the clause was plausible, the
clause was ambiguous).  Accordingly, because the forum selection
clause at issue here is only susceptible of one interpretation, I
conclude that it is clear and unambiguous.

Turning to plaintiffs' second argument, according to which
the fact that plaintiffs Callandrello and Komito checked a box in
an online registration form affirming acceptance of a User
Agreement does not mean that a forum selection clause contained
in that Agreement was "reasonably communicated" to them,
plaintiffs rely principally on *Comb v. PayPal, Inc.*, 218
F.Supp.2d 1165 (N.D. Cal. 2002).  However, the *Comb* court did
not, as plaintiffs suggest, hold that an agreement was not formed
when the *Comb* plaintiffs checked the "I agree" box in an online
registration form signifying acceptance of that user agreement.
Rather, the *Comb* court "assume[d] without deciding that the
circumstantial evidence" -- including a showing that in becoming
a PayPal user, "[a] prospective customer clicks a box at the
bottom of the application page that reads, '[you] have read and
agree to the User Agreement and [PayPal's] privacy policy;'" a
showing of the dates plaintiffs opened their accounts; and a copy

of the agreement in effect at that time -- was "sufficient to demonstrate that [plaintiffs] entered into agreements with Paypal." *Comb*, 218 F.Supp.2d at 1172.  Indeed, plaintiffs Callandrello and Komito do not appear to dispute that they accepted the applicable eBay User Agreement when they signed up for eBay.[12]  Rather, they rely on *Comb* for the proposition that the forum selection clause contained in the User Agreement was not "reasonably communicated" to them, a concept not discussed by the *Comb* court.

Other courts in this Circuit have held that a clear and unambiguous forum selection clause is "reasonably communicated" to a plaintiff where the plaintiff is required to assent to an online user agreement, such as defendant eBay's, which contains the clause.  *See, e.g.*, *Novak*, 2007 WL 922306, at *7-9 (finding that the forum selection clause in an online agreement was reasonably communicated to the plaintiff where the plaintiff was required to "click-through" his assent to the agreement containing the forum selection clause); *Person v. Google*, 456 F.Supp.2d 488, 493 (S.D.N.Y. 2006) (enforcing an online forum

---

[12] Plaintiffs do vigorously protest the fact that defendant eBay "failed to present any proof that Plaintiff Komito accepted the agreement and/or is Defendant eBay's customer," contending that for this reason, defendant eBay "did not fulfill its burden of showing that the agreement was reasonably communicated to Plaintiff Komito."  Pl.'s Mem. In Opp. (Venue) at 18. However, the SAC contains allegations that plaintiff Komito became an eBay user at some point before 2005, SAC ¶¶ 4, 186, and plaintiff Komito himself alleges that he has sold coins on eBay for the past ten years.  Komito Decl. ¶ 2.  There is no dispute that those who become eBay users check a box affirming acceptance of the eBay User Agreement in force at the time.

selection clause where the evidence demonstrated that "every customer must click on a box acknowledging that they agree to the terms and conditions of Defendant's contract," and thus, "Plaintiff's very existence as an AdWords customer is evidence that he agreed to the 2003 form contract proffered by Defendant."); *Novak v. Overture Servs., Inc.*, 309 F.Supp.2d 446, 451 (E.D.N.Y. 2004) (enforcing the forum selection clause contained in an online agreement where the plaintiff was required to click a button indicating acceptance in order to proceed and, therefore, had a reasonable opportunity to review the "Terms and Conditions of User for Google Groups").  Accordingly, because there is no dispute that persons or entities desiring to become eBay users are required to assent to the User Agreement in force at the time, and because plaintiff Callandrello alleges that he became an eBay user, *see* SAC at ¶ 18, and does not dispute eBay's allegation that he became an eBay user in 2005, when the 2003 User Agreement was in force, I conclude without need of an evidentiary hearing that the forum selection clause contained in the 2003 User Agreement was reasonably communicated to plaintiff Callandrello.  As further set forth below, however, I conclude that defendant eBay has not met its burden of showing that the clause was reasonably communicated to plaintiff Komito, as defendant eBay has not shown that plaintiff Komito became an eBay user at a time when the 2003 User Agreement was in force.

- 33 -

2.  *Mandatory or Permissive Nature of Clause*

Forum selection clause language must be mandatory to be enforced. *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distrib., Inc.*, 22 F.3d 51, 52-53 (2d Cir. 1994).  "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) (citing *Boutari*, 22 F.3d 51 at 52-53).  Here, the forum selection clause provides that "any Claim may be adjudicated by a court of competent jurisdiction located in Santa Clara County, California or where the defendant is located (in [eBay's] case San Jose, California, and in [the user's] case [the user's] home address or principal place of business).  Were this the only relevant provision found in the User Agreement, the use of the permissive word "may" would cause me to find that the parties merely agreed upon a potential situs for suit as opposed to designating an exclusive forum for litigation. *See, e.g.* *Boutari*, 22 F.3d at 52-53 (finding that "[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive, [unless] mandatory venue language is employed") (internal quotation omitted)); *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 979 (2d Cir. 1993) (noting that the language "may be

- 34 -

brought" in a forum selection clause is permissive in nature).
However, because the inquiry into the permissive or mandatory
nature of a forum selection clause "is one of contract
interpretation," *Phillips*, 494 F.3d at 386, I must consider the
specific clause at issue here in light of its overall context in
the User Agreement.

The forum selection clause relating to litigation is found
in the second subsection of Paragraph 17 of the User Agreement,
which is captioned "Resolution of Disputes."  Immediately before
its three subsections, Paragraph 17 provides that disputes "shall
be resolved in accordance with one of the subsections below or as
otherwise mutually agreed upon in writing by the parties."  The
term "shall" connotes a mandatory nature, and therefore,
Paragraph 17 can only reasonably be interpreted as requiring that
qualifying disputes be resolved in a manner comporting with one
of its three subsections.  *HongKong and Shanghai Banking Corp.*
*Ltd. v. Suveyke*, 392 F.Supp.2d 489, 492 (S.D.N.Y. 1987) ("the use
of the word 'shall' is a clear indication of mandatory, rather
than permissive language").  The subsections are each phrased in
permissive language.  The first subsection provides that the user
or eBay "may elect to resolve the dispute through binding
arbitration . . . where no in-person appearance is required,"
where "the total amount of the award sought is less than
$10,000," which is not the case here.  The second subsection,

- 35 -

which is at issue here, provides that claims "may be adjudicated by a court . . . located in Santa Clara County, California."  The third subsection provides as follows: "Alternatively, eBay will consider use of other alternative forms of dispute resolution, such as binding arbitration to be held in Santa Clara County, California, or another location mutually agreed upon by the parties."  *See* Second Mandella Decl. Ex. A ¶ 17.

The fact that the three subsections of Paragraph 17 are phrased in permissive language does not, in this case, render the forum selection clause itself permissive in nature.  While it is true that the clause, standing alone, appears only to confer jurisdiction on Santa Clara County courts without rendering that jurisdiction exclusive, "further language" exists in the User Agreement that provides evidence of the parties' intent to make the specified jurisdiction exclusive.  *See Boutari*, 22 F.3d at 52-53.  Because Paragraph 17 mandates that disputes "shall be resolved in accordance with one of [its] subsections," the paragraph is most reasonably construed as an exclusive list of the options for dispute resolution available to the parties.  Pursuant to that list, a complaining party must either (1) elect to resolve a dispute through arbitration not requiring in-person appearances (if the dispute involves a claim for less than $10,000), or it may (2) bring suit in a court located in Santa Clara County, California, or where the defendant is located, or

- 36 -

it may (3) discuss the use of alternative forms of dispute
resolution with the opposing party.  The User Agreement does not
permit a complaining party to do anything else.  Reading
Paragraph 17 as a whole, it is impossible to conclude that a
complaining party may commence litigation in a court not located
in either Santa Clara County or "where the defendant is located,"
and yet still comply with Paragraph 17's mandate that disputes be
resolved in accordance with its subsections.  Accordingly, I find
that the forum selection clause at issue here is mandatory in
nature.[13]

    3.   *Whether Forum Selection Clause is Controlling*

    The third requirement of a presumptively enforceable forum
selection clause is that "the claims and parties involved in the
suit [must be] subject to the forum selection clause."  *Salis v.
Am. Export Lines*, 566 F.Supp.2d 216, 221 (S.D.N.Y. 2008) (citing
*Phillips*, 494 F.3d at 383).  Plaintiffs argue that neither their
claims nor they themselves, nor defendants ANA and Stuppler
Co.,[14] are subject to the forum selection clause at stake here.

---

[13] I note that subsequent revisions to the User Agreement make clear
that the exclusive forum for litigation is Santa Clara County, California,
lending support to my conclusion that the parties also intended the 2003
version of the Agreement to provide for an exclusive forum for litigation.
*See* First Mandella Decl. Ex. A at 5 (copy of 2008 User Agreement specifying
that disputes "must be resolved by a court located in Santa Clara County,
California, except as otherwise agreed by the parties or as described in the
Arbitration Option paragraph below").

[14] Plaintiffs also assert that defendant PNG is not bound by the forum
selection clause, nor is it entitled to enforce it.  In light of my
determination that I lack personal jurisdiction over defendant PNG, I need not
consider this assertion.

- 37 -

    i.   *Whether Plaintiffs' Claims Fall Within the Scope of the Forum Selection Clause*

The terms of the User Agreement provide that its dispute resolution provisions, including the forum selection clause relating to litigation, apply to "any claim or controversy at law or equity that arises out of this Agreement or [eBay's] services." While defendant eBay appears to concede that plaintiffs' antitrust and trade libel claims do not arise out of the User Agreement, they argue, and plaintiffs dispute, that those claims arise out of eBay's services. I agree with defendant eBay and find that plaintiffs' claims arise out of eBay's services.

The Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the public policy favoring their use. *See Russbeer Intern. LLC v. OAO Baltika Brewing Co.*, No. 07-CV-1212, 2008 WL 905044 (E.D.N.Y. Mar. 31, 2008) ("The Second Circuit has consistently held that forum selection clauses are to be interpreted broadly and are not restricted to pure breaches of the contracts containing the clauses."); *Roby v. Corp. of Lloyds*, 996 F.2d. 1353, 1361 (2d Cir. 1993), *cert. denied*, 510 U.S. 945 (1993) (acknowledging the "strong public policy in favor of forum selection and arbitration clauses" and holding that forum selection clauses encompassing claims "relating to" and "in connection with" investors' contracts covered investors' securities and RICO claims).

- 38 -

Accordingly, I will construe the term "services" broadly, as opposed to the narrow construction plaintiffs suggest.[15]

Bearing this in mind, I note that the crux of plaintiffs' complaint against all of the defendants is that defendants either participated in or actually instituted a policy that only permits coins graded by one of five "approved" grading services to be listed for sale on eBay as "certified" coins.  In other words, plaintiffs' claims flow from their dissatisfaction with a change in the conditions under which eBay provides auction listing services to its users.  This dissatisfaction underlies both plaintiffs' antitrust claims (which allege that defendants conspired together to restrain trade by enacting the Policy) and plaintiffs' trade libel claims (which allege that press releases written about or emails sent in accordance with the Policy defamed them).  Under these circumstances, one can only find that plaintiffs' claims arise out of eBay's services.[16]  Accordingly,

---

[15] Although the term "services" is not defined in the User Agreement, plaintiffs argue that it should be interpreted to mean only those services referred to in the User Agreement.  Even if I were to accept this argument, plaintiffs themselves interpret the "services" described in the User Agreement to be "providing the space for auctions' listings and charging fees for it." Pl.'s Mem. In Opp. (Venue) at 14.  Given my conclusion below that plaintiffs' antitrust and trade libel claims arise out of a change in the conditions under which eBay provides space for auction listings to its users, even if I were to credit plaintiffs' construction, I would still conclude that plaintiffs' claims arise out of eBay's services.

[16] The cases cited by plaintiffs in opposition to this argument are misplaced, as they do not concern forum selection clauses encompassing claims arising out of a defendant's "services." *Bank of Am. Corp. v. Braga Lemgruber*, 385 F.Supp.2d 200, 235-37 (S.D.N.Y. Jan. 5, 2005) (considering scope of forum selection clause covering "any action 'seeking to enforce any provision of, or based on any right arising out of, this Agreement'"); *Phillips*, 494 F.3d at 382, 389-92 (considering scope of forum selection clause

- 39 -

I conclude that plaintiffs' claims fall within the scope of the
forum selection clause.

       ii.  *Whether The Parties are Bound By the Forum*
           *Selection Clause*

     Given that plaintiffs do not dispute eBay's allegation that
plaintiff Callandrello became an eBay user in 2005, together with
my conclusion that becoming a user at that time necessarily
implies that the mandatory forum selection clause in the 2003
User Agreement was reasonably communicated to the putative user,
and that the new user was required to accept the 2003 User
Agreement before being permitted to access eBay, there is no
question that plaintiff Callandrello is bound by the forum
selection clause.  The situation of the other individual
plaintiffs, however, is different.  Ebay has withdrawn its
improper venue motion with regard to plaintiff Kirinchencko on
the grounds that plaintiff Kirichenko accepted eBay's user
agreement in 2002, when the agreement did not contain a forum
selection clause.  Similarly, although eBay has produced no
record of when plaintiff Komito signed up for eBay, it has not
disputed plaintiff Komito's assertion that he has been selling
coins on eBay for the past ten years.  Komito Decl. ¶ 2.  If this
is true, then plaintiff Komito, like plaintiff Kirinchenko,
accepted a version of eBay's user agreement that did not contain

---

applying to "any legal proceedings that may arise out of [the agreement]").

- 40 -

a forum selection clause. Accordingly, while I conclude that plaintiff Callandrello is bound by the forum selection clause in the 2003 User Agreement, I do not conclude that plaintiffs Komito and Kirinchenko are bound by the clause.[17]

There is no dispute that corporate plaintiff UGS never assented to any version of eBay's user agreement. The parties dispute, however, whether plaintiff UGS should nevertheless be bound by the forum selection clause in the 2003 User Agreement. Courts in this district and others have held that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767, 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)). "In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Id.* (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (quoting *Manetti-Farrow*, 858 F.2d at 514 n.5 (9th Cir. 1988)); *see also*

---

[17] Because they parties have not fully addressed the question of whether the individual plaintiffs are bound by subsequent revisions to eBay's user agreement, and for reasons stated elsewhere in this opinion, I need not determine whether plaintiffs Komito and Kirinchenko are bound by the forum selection clause that has appeared in revisions to the user agreement since 2003.

- 41 -

*Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99 Civ. 10550, 2000 WL 1277597, at *5 (S.D.N.Y. Sept. 7, 2000) ("The MBNA companies were sufficiently 'closely related' that it was 'foreseeable' that they would be bound").  "A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Cuno, Inc. v. Hayward Indust. Prods., Inc.*, No. 03 Civ. 3076, 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005) (quoting *Lipcon*, 148 F.3d at 1299); *see also Rohrbaugh v. U.S. Mgmt., Inc.*, No. 05-CV-3486, 2007 WL 1965417, at *4 (E.D.N.Y. July 2, 2007).  Further, "[w]hile it may be true that third-party beneficiaries to a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements, a third-party beneficiary status is not required." *Hugel*, 999 F.2d at 209-10 n.7.

In this case, I conclude that plaintiff UGS is closely related to plaintiff Callandrello and the alleged class of coin-seller plaintiffs, and that is was foreseeable that plaintiff UGS would be bound by the forum selection clause to which plaintiff Callandrello assented.  Plaintiff UGS's claim that it has been injured by eBay's policy depends upon the claims of plaintiff UGS's customers -- who, together with customers of other "excluded" grading services, form the putative class of coin-seller plaintiffs -- that eBay's policy prevents them from

- 42 -

listing coins graded by plaintiff UGS on eBay.  If the coin-
seller plaintiffs *were* allowed to list coins graded by plaintiff
UGS on eBay, neither they nor plaintiff UGS would have suffered
the injuries they allege here.  In this way, plaintiff UGS's
claims are "directly related to, if not predicated upon" the
claims of sellers of coins graded by UGS, including plaintiff
Callandrello.

     In addition, the close business relationship between
plaintiff UGS and plaintiff Callandrello provides further support
for the conclusion that it was foreseeable that plaintiff UGS
would be bound by the forum selection clause.  Plaintiff
Callandrello is the president of plaintiff UGS as well as a
shareholder of UGS, although the percentage stake he holds has
not been disclosed by the parties.  *See* SAC at ¶ 3; Declaration
of John Callandrello dated April 24, 2009, at ¶ 2.  His account
with eBay is registered to "ugs.llc@hotmail.com."  Second
Mandella Decl. at ¶ 4.  Further, plaintiff Callandrello has
submitted an affidavit in this matter on behalf of plaintiff UGS
and himself as representatives of the putative class of coin
graders injured by eBay's policy.  Declaration of John
Callandrello dated January 13, 2009.  Other courts have found
that a close business relationship between a non-party and a
party to an agreement is an important consideration in
determining whether a forum selection clause in the agreement is

- 43 -

enforceable against the non-party.  *See, e.g.*, *Hugel*, 999 F.2d at
209-10 (affirming district court's finding that two non-signatory
corporations were bound by the plaintiff's assent to forum
selection clauses, basing its finding on the fact that the
plaintiff was president of both non-signatory corporations and
owned 99% of one corporation, which owned 100% of the other);
*Nanopierce Techs.*, 2003 WL 22882137, at *5 (finding that a forum
selection clause in a contract signed by a corporation also bound
the corporation's chief financial officer); *Cinema Laser Tech.,
Inc. v. Hampson*, Civ. A. No. 91-1018, 1991 WL 90913, at *3
(D.N.J. May 30, 1991) ("Defendants might also argue that it would
be unfair to apply the forum selection clause to individuals who
were not parties to the Joint Venture Agreement, such as Sweatt,
Berkowitz and McCurdy.  However, these individuals were all
directors of Hampson's corporation, Digital, who was a party.").

Plaintiffs and defendant eBay also disagree as to whether
defendant eBay's co-defendants are bound by the forum selection
clause.  The same standard applies to the determination whether
non-signatory defendants are bound by a forum selection clause as
applies to non-signatory plaintiffs -- *i.e.*, the non-signatory
defendant must be "'closely related' to the dispute such that it
becomes 'foreseeable' that it will be bound." *Nanopierce*, 2003
WL 22882137, at *5.  In support of its argument that its co-
defendants should be bound, defendant eBay cites *Novak v. Tucows,*

- 44 -

*Inc.*, No. 06-CV-1909, 2007 WL 922306, (E.D.N.Y. Mar. 26, 2007),
and *Weingard v. Telepathy, Inc.*, No. 05 Civ.2024, 2005 WL 2990645
(S.D.N.Y. Nov. 7, 2005), although plaintiffs contend that the
latter case supports the contrary argument.  In *Novak*, the court
determined that where the plaintiff's claims against the non-
signatory defendant were "nearly identical" to those against the
signatory defendant, and all of the claims arose out of the same
transaction involving both defendants, "[i]t was certainly
foreseeable that any claims [plaintiff] might raise against [the
non-signatory] in relation to the transfer could be subject to
the terms contained in his agreement with [the signatory]."
*Novak*, 2007 WL 922306, at *13.  In *Weingard*, the court found that
the "closely related" test was satisfied where the plaintiff
alleged that the defendants acted in concert to injure him and
his claims were "substantially identical with respect to each
defendant, as he sue[d] them together in all but one claim . . .
and the claims all arise out of the defendants' relationships
with each other."  *Weingard*, 2005 WL 2990645, at *5-6.

The circumstances present here are analogous to those
present in *Novak* and *Weingard.*  Plaintiffs allege that defendants
conspired together in violation of the antitrust laws when they
instituted the Policy at the heart of this case.  Accepting
plaintiff's allegations as true, as I must at this stage, it was
foreseeable that eBay's co-defendants would be bound by forum

- 45 -

selection clauses in contracts which defendant eBay entered into with parties claiming to be injured by the Policy.  As in *Novak* and *Weingard*, plaintiffs' claims are substantially identical with regard to each defendant, with the exception of its trade libel claims, which it asserts only against defendants eBay and ANA. *See* SAC ¶¶ 102-89.  All of plaintiffs' claims arise out of the same alleged conspiracy between the defendants, pursuant to which the Policy was enacted and allegedly defamatory emails and statements regarding the Policy were published.  Considering these factors together, I conclude that defendant eBay's co-defendants are "closely related" to this dispute, and therefore, that they are bound by the forum selection clause.  Accordingly, defendant eBay has met its burden of showing that the forum selection clause is presumptively enforceable between defendants and plaintiffs Callandrello and UGS.

4.  *Whether Presumption of Enforceability is Rebutted*

Once a forum selection clause has been shown to be presumptively enforceable, a party seeking to invalidate the clause must show that: (1) the clause is the result of fraud or overreaching; (2) the party will be deprived of its day in court as the result of the "grave inconvenience or unfairness of the selected forum"; (3) the party may be deprived of a remedy due to the "fundamental unfairness" of the chosen law; or (4) the clause contravenes a strong public policy of the forum state.  *Roby v.*

- 46 -

*Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (citations
omitted).  A party attempting to avoid enforcement of a valid
forum selection clause based on inconvenience or unfairness must
"show that trial in the contractual forum will be so gravely
difficult and inconvenient that he will for all practical
purposes be deprived of his day in court."  *M/S Bremen v. Zapata
Off-Shore Co.*, 407 U.S. 1, 18 (1972).

     i.   *Unconscionability*

Plaintiffs first argue that the forum selection clause in
the 2003 User Agreement is unenforceable because it is
unconscionable.  The question of whether a contract provision is
unconscionable is governed by state law.  *See Gill v. World
Inspection Network Int'l, Inc*., No. 06-CV-3187, 2006 WL 2166821,
at *5 (E.D.N.Y. July 31, 2006).  New York law recognizes both
procedural and substantive forms of unconscionability.
Procedural unconscionability is found where the contract
formation process involved a "lack of meaningful choice," which
is assessed in light of all the circumstances surrounding the
contract, including whether each party had a reasonable
opportunity to understand the terms of the contract, whether
deceptive tactics were employed, the use of fine print, and
disparities in education, experience and bargaining power.
*Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10-11 (N.Y.
1988).  Substantive unconscionability "entails an analysis of the

- 47 -

substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Id.* at 12.  Although a finding that a contract is unenforceable is generally predicated upon a finding that a contractual provision is both procedurally and substantively unconscionable, under New York law, the substantive element alone may render a provision unenforceable. *See Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569 (1st Dep't. 2000).

Plaintiffs argue that the forum selection clause in the 2003 User Agreement is procedurally unconscionable because the plaintiffs who became eBay users and accepted the Agreement had no choice but to accept the forum selection clause.  However, the mere fact that plaintiffs were required to accept a form agreement drafted by defendant eBay in order to use defendant eBay's services does not render the terms of that agreement procedurally unconscionable.  "An 'agreement cannot be considered procedurally unconscionable, or a contract of adhesion, simply because it is a form contract.'" *Novak v. Overture Servs., Inc.*, 309 F.Supp.2d 446, 452 (E.D.N.Y. 2004) (quoting *Rosenfeld v. Port Auth. of N.Y. and N.J.*, 108 F.Supp.2d 156, 164 (E.D.N.Y. 2000) and holding that "the lack of a dialogue between Plaintiff and Google does not mean that this forum selection clause was unenforceable").  Plaintiffs also argue that the 2003 User Agreement is procedurally unconscionable because they had no

- 48 -

meaningful alternative to registering for eBay, since eBay is the largest market for online auctions.  Plaintiffs do not allege, however, that eBay is the *only* market for online auctions, and in fact, they acknowledge eBay's competitors in the market for online auction services in their brief.  Thus, because plaintiffs could have chosen not to register to use eBay's services, plaintiffs had a meaningful alternative to accepting the terms of the 2003 User Agreement.  *See, e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991) (finding no evidence of overreaching where plaintiffs "retained the option of rejecting the contract with impunity").

Turning to substantive unconscionability, plaintiffs contend that the clause is substantively unconscionable because its terms are one-sided and benefit defendant eBay only.  In support of their argument, plaintiffs cite *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D. Cal. 2002), in which PayPal's user agreement was held to be substantively unconscionable where, in the event of a dispute, PayPal "at its sole discretion" was permitted to "restrict accounts, withhold funds, undertake its own investigation of a customer's financial records, close accounts, and procure ownership of all funds in dispute unless and until the customer is later determined to be entitled to the funds in dispute."  *Id.* at 1174-75.  By contrast, eBay's 2003 User Agreement does not appear to confer any such one-sided powers on

- 49 -

defendant eBay.  In addition, the 2003 User Agreement binds both
defendant eBay and its users to the forum selection clause, and
the clause is therefore not "one sided" in the sense that only
the users are bound.  Nor does the requirement that suits against
eBay be brought in Santa Clara County, while clearly beneficial
to eBay, render the forum selection clause substantively
unconscionable.  Courts have recognized the valid business
reasons underlying a company's choice of its principal place of
business as the forum for dispute resolution with its customers,
especially where the company's customers are located in numerous
jurisdictions.  *See, e.g.*, *Carnival Cruise*, 499 U.S. at 593-95.
Accordingly, I conclude that the forum selection clause is
neither procedurally nor substantively unconscionable.

    ii.  *Grave Inconvenience and Unfairness*

    Plaintiffs' second argument against enforcement of the forum
selection clause is that enforcement of the clause would result
in grave inconvenience and unfairness, effectively depriving at
least some of them of their day in court.  First, they argue that
the chosen forum, Santa Clara County, is too remote from New
York, and that requiring them to travel there to pursue their
claims is fundamentally unfair.  The Supreme Court has held,
however, that requiring plaintiffs to travel similar distances is
not unreasonable.  *See, e.g.*, *Carnival Cruise*, 499 U.S. at 594-95
(1991) (enforcing a forum selection clause requiring Washington

- 50 -

state residents to pursue their action in Florida); *see also* *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 10 (2nd Cir. 1995) ("a forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel.").  In addition, plaintiff Komito argues that he suffers from severe coronary artery disease, hypertension, and a prostate condition, which render it impossible for him to travel to California without suffering serious consequences for his health.[18]  While it is possible that a plaintiff unable to travel to a distant forum for medical reasons could establish that enforcement of a forum selection clause is unreasonable with regard to his claims, in this case, plaintiff Komito has not met the "heavy burden of proof" required to set aside a forum selection clause on the ground of inconvenience.  *See Carnival Cruise*, 499 U.S. at 595, (quoting *The Bremen*, 407 U.S. at 17).  Plaintiff Komito is a member of a putative class of coin-seller plaintiffs, which also includes plaintiffs Kirichencko and Callandrello.  There is no allegation that either plaintiff Kirichencko or Callandrello is medically unable to travel to California, and therefore, should this action be transferred to California, plaintiff Komito's interests would be adequately represented by other members of his class.  I

---

[18] Plaintiffs' brief refers to a letter from plaintiff Komito's doctor, but the letter was not provided to this Court.  For the reasons stated below, however, I need not examine the letter.

- 51 -

further note that the Second Circuit has held that "A plaintiff may have his 'day in court' without ever setting foot in a courtroom." *Effron*, 67 F.3d at 11 (citations omitted).  There is no evidence here that plaintiff Komito would not be able to participate in proceedings in California via telephone or videoconference.  Accordingly, even accepting plaintiff Komito's allegations concerning his medical condition as true, I conclude that plaintiff Komito has not established that enforcement of the forum selection clause would result in grave unfairness.

Finally, plaintiffs argue that defendant eBay's choice of forum "appears . . . to shield Defendant eBay from liability instead of providing a neutral forum for the parties to hear disputes."  Pl.'s Mem in Opp. (Venue) at 25.  In support of this argument, plaintiffs cite a case from California state court, *Bolter v. Superior Court*, 104 Cal. Rptr. 2d 888 (2001).  In *Bolter*, the court held that a forum selection clause providing for arbitration in Utah was "unduly oppressive" where it required franchisees, whose original agreements with the franchisor provided for dispute resolution in the franchisees' home state of California (where the franchisor's headquarters were previously located), "to close down their shops, pay for airfare and accommodations in Utah, and absorb the increased costs associated in having counsel familiar with Utah law." *Id.* at 894-95.  In addition to noting that *Bolter* is not binding precedent on this

- 52 -

Court,[19] I find that the circumstances present in *Bolter* are not present here.   In this case, defendant eBay has never relocated to a different forum or changed the forum in which it may be sued pursuant to the forum selection clause in its user agreement. Futher, in *Bolter*, the franchisee-petitioners were all located in California, whereas here, the individual plaintiffs hail from different states, and members of their putative classes may well be located across the nation.   Thus, there is no evidence that the forum selected in eBay's 2003 User Agreement is "unduly oppressive."

        Plaintiffs have not shown that the forum selection clause is the result of fraud or overreaching, nor have they shown that enforcement of the clause would result in grave inconvenience or unfairness.   Accordingly, I conclude that plaintiffs have failed to rebut the presumption that the forum selection clause is enforceable.

C.     *Whether This Action Should Be Dismissed or Transferred*

        Because I hold that the forum selection clause in the 2003 User Agreement is valid and should be enforced as to plaintiffs Callandrello and UGS and as to all defendants, it is apparent

---

        [19] Indeed, "in the specific context of the franchisor/franchisee relationship, the Second Circuit has repeatedly rejected the argument that an arbitral forum selection clause can be unconscionable because of the high costs that may be associated in traveling and proceeding in a distant location." *Gill v. World Inspection Network Int'l, Inc.*, No. 06-CV-3187, 2006 WL 2166821, at *6 (E.D.N.Y. July 31, 2006) (citing *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 163 (2d Cir. 1998), *cert denied*, 525 U.S. 1103 (1999)).

- 53 -

that venue is not proper in the Eastern District of New York with regard to those plaintiffs' claims.  Although defendant eBay contends that these claims should be dismissed, this Court has discretion to transfer this matter to any district in which it could have been brought.  28 U.S.C. § 1406(a); *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2nd Cir. 1993) (district court may either dismiss or transfer the action to an appropriate court). In determining whether to dismiss or transfer a case, the court must weigh which is the more efficient and just means of enforcing the forum selection clause.  *See Licensed Practical Nurses, Technicians & Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*, 131 F.Supp.2d 393, 409 (S.D.N.Y. 2000). While dismissal is appropriate in cases where the forum selection clause affords plaintiff a choice between different fora, transfer is appropriate where the plaintiff may only file his claims in one forum pursuant to the clause.  *Cuno, Inc. v. Hayward Indust. Products, Inc.*, No. 03 Civ. 3076, 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005).  Here, plaintiffs bring claims arising under the federal antitrust laws, and therefore, plaintiffs Callandrello and UGS may only file suit in federal court.  *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379-80 (1985) ("federal antitrust claims are within the exclusive jurisdiction of the federal courts").  The federal district court located in Santa Clara County is the Northern

- 54 -

District of California, and accordingly, transfer to that
District is appropriate.

Further, although I have not determined that plaintiffs
Komito and Kirichenko are bound by the forum selection clause,
transfer of this case in its entirety is appropriate pursuant to
28 U.S.C. § 1404(a).[20]  Section 1404(a) provides that "[f]or the
convenience of parties and witnesses, in the interest of justice,
a district court may transfer any civil action to any other
district or division where it might have been brought."  Courts
in this Circuit consider the following factors when determining
whether to transfer a case pursuant to § 1404(a): "(1) the
convenience of witnesses, (2) the convenience of the parties, (3)
the locus of operative facts, (4) the availability of process to
compel the attendance of unwilling witnesses, (5) the location of
relevant documents and the relative ease of access to sources of
proof, (6) the relative means of the parties, (7) the forum's
familiarity with the governing law, (8) the weight accorded the
plaintiff's choice of forum, and (9) trial efficiency and the

_____

[20] Although I have already held that I lack personal jurisdiction over
defendant PNG, "[t]he Second Circuit has held that a district court also has
the 'power to transfer venue even it if lacks personal jurisdiction over
defendants,' if the requirements of the governing statute, 28 U.S.C. §
1404(a), are met."  *Harris v. Ware*, No. 04 CV 1120, 2005 WL 503935, at *2
(E.D.N.Y. Mar. 4, 2005).  Because the parties have not discussed whether
personal jurisdiction over defendant PNG exists in the Northern District of
California under California law, I decline to perform that analysis here.  I
note, however, that defendant PNG's website appears to indicate that PNG's
headquarters are located in California.  *See* http://www.pngdealers.com/
(listing Executive Director's contact information in Fallbrook, California)
(last visited on May 18, 2009).

- 55 -

interest of justice, based on the totality of the circumstances."
*In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F.Supp.2d
164, 167-68 (E.D.N.Y. 2006).

In this case, the balance of factors tips in favor of
transferring this action to the Northern District of California.
Where a substantial portion of the claims in this case must be
heard in that district pursuant to a forum selection clause, the
interests of justice and efficiency strongly favor transferring
identical claims against the same defendants by different
plaintiffs to that district.  While it is true that "[a]
plaintiff's choice of forum is generally entitled to considerable
weight," *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659
(S.D.N.Y. 1998), I note that "when the plaintiff does not reside
in the chosen forum, and the plaintiff's chosen forum has no
material connection to the facts or issues of the case, that
weight is diminished."  *Cali v. East Coast Aviation Servs., Ltd.*,
178 F.Supp.2d 276, 292 (E.D.N.Y. 2001).  Here, of the individual
and corporate plaintiffs, only plaintiff Kirichenko alleges that
he is a New York resident.[21]  Aside from plaintiffs' allegation
that the injury to their reputations occurred in their places of
residence -- which in plaintiff Kirichenko's case, is New York --
the state of New York has no material connection to the facts in

---

[21] Neither the Amended Complaint nor plaintiff Callandrello's
declarations specify plaintiff Callandrello's state of residence.  Plaintiff
UGS is a New Jersey corporation, and plaintiff Komito resides in New Jersey.

- 56 -

this case.  There is no allegation that any events, meetings or other incidents relevant to plaintiffs' claims occurred in New York.  Thus, other than with regard to plaintiff Kirichenko, the deference to which plaintiffs' choice of form is entitled is diminished.

Consideration of the remaining factors supports transfer of this action.  The convenience of witnesses and the parties is a neutral factor, as the only potential witnesses identified in this action are the parties themselves, and while the named plaintiffs appear to be located either in New York or in states close to New York, defendants are located either in California or states close to California.  Nor does the locus of operative facts have a definite location favoring or disfavoring transfer, as plaintiffs' allegations refer either to actions that were taken over the Internet or in unknown locations.  By contrast, the documents relevant to this action largely consist of defendant eBay's corporate records, which are located in California.  Although it is more burdensome on plaintiffs to require them to travel to California than it would be on defendants to require them to travel to New York, monetary hardship alone does not defeat the operation of a forum selection clause with regard to those plaintiffs who are bound by it. *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03 Civ. 5262, 2004 WL 421793, at *4 (S.D.N.Y. Mar. 5, 2004) ("Simply

- 57 -

claiming financial distress does not warrant setting aside a
valid forum selection clause.") (citing *Envirolite Enters., Inc.
v. Glastechnishe Industrie Peter Lisec Gesechaft M.B.H.*, 53 B.R.
1007 (S.D.N.Y. 1985) (refusing to find that enforcement of a
forum selection clause would be unreasonable simply because the
plaintiff was bankrupt)).  Nor does it, with regard to those
plaintiffs who are not bound, sufficiently outweigh the interests
of justice and efficiency present in this case, which are best
served by transfer.  Therefore, for the reasons stated above, I
conclude that this action should be transferred to the Northern
District of California.  Accordingly, I do not reach defendants'
substantive motions to dismiss the SAC for failure to state a
claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure, nor need I rule upon plaintiffs' motion to strike,
which relates solely to defendants' Rule 12(b)(6) motions.

## CONCLUSION

For the reasons set forth above, the Clerk is directed to
transfer this case to the United States District Court for the
Northern District of California, *see* 28 U.S.C. § 1404(a), and to
transmit a copy of the within to the parties and the Magistrate
Judge.

SO ORDERED.
Dated:     Brooklyn, NY
           June 9, 2008

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge