**E-FILED on** _3/8/2011_____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNIVERSAL GRADING SERVICE, et al.<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>EBAY, INC., et al.<br><br>　　　　Defendants. | No. C-09-2755 RMW<br><br>ORDER GRANTING MOTIONS TO DISMISS AND MOTION TO STRIKE<br><br>**[Re Docket Nos. 125, 126, 142]** |

Plaintiffs Universal Grading Service ("UGS"), John Callandrello, Joseph Komito, and Vadim Kirichenko, collectively referred to as "plaintiffs," originally filed their class action complaint in the United States District Court for the Eastern District of New York on August 29, 2008. Plaintiffs' original and amended complaints all arise from allegations of antitrust violations arising from a policy enacted by defendant eBay, Inc. ("eBay") regarding the selling of coins on its website. Defendants eBay, American Numismatic Association ("ANA"), and Professional Numismatists Guild ("PNG") filed motions to dismiss plaintiffs' First Amended and Second Amended complaints under 12(b)(6). On June 10, 2009, the District Court for the Eastern District of New York ordered the case transferred in its entirety to the Northern District of California. After the case was transferred, the parties stipulated to filing new motions to dismiss and the filing of plaintiffs' Third

ORDER GRANTING MOTIONS TO DISMISS AND MOTION TO STRIKE—No. C-09-2755 RMW
JLR

United States District Court<br>For the Northern District of California

**United States District Court**
For the Northern District of California

1    Amended Complaint ("TAC").  Pursuant to that stipulation, defendants eBay and PNG filed separate

2    motions to dismiss the TAC on May 14, 2010.[1]  Defendants also moved to strike the Declaration of

3    Marina Trubitsky ("Trubitsky Declaration") submitted by plaintiffs in support of their Opposition to

4    Defendants' Motions to Dismiss the TAC.

5         On September 3, 2010, the court heard defendants' separate motions to dismiss plaintiffs'

6    TAC.  Having considered the papers submitted by the parties and the arguments of counsel, and for

7    the reasons set forth below, the court grants defendants' motions to dismiss.  The court also grants

8    eBay's motion to strike the Declaration of Marina Trubitsky.

9                                    **I. BACKGROUND**

10        Plaintiff UGS is in the business of grading coins.  TAC ¶ 2.  Plaintiff Callandrello is the

11   president of UGS, as well as a shareholder in the company.  *Id.* ¶ 3; Declaration of John Callandrello

12   dated April 24, 2009, at ¶ 2.  Plaintiffs Komito and Kirichenko are individual coin dealers who

13   engage in the business of buying and selling coins within the online auctions market including, but

14   not limited to, defendant eBay.  TAC ¶¶ 4-5.

15        According to the TAC, defendant PNG formed a group known as the "Internet Rules

16   Committee" in or about 2001.  TAC ¶ 39.  PNG consists of coin dealer members who must, among

17   other things, abide by PNG's Code of Ethics and maintain a "significant net worth."  *Id.* ¶ 12.  This

18   Internet Rules Committee consisted of various coin industry insiders, including Barry Stuppler

19   ("Stuppler") in his capacity as then-governor and chairman of the ANA Consumer Protection

20   Committee.  *Id.* ¶ 39.  ANA is a federally chartered not-for-profit Internal Revenue Code § 501 (c)

21   (3) entity that acts as "the preeminent trade association in the numismatic hobby and the multi-

22   billion dollar industry associated with the numismatic hobby."  *Id.* ¶ 3.  Plaintiffs allege that the sole

23   purpose of the Internet Rules Committee was "to interfere with and obstruct the ability of the smaller

24   coin grading services . . . to participate in the then burgeoning online auctions market for certified

25   coins."  *Id.* ¶ 39.

26

27

28   ---
     [1] Defendants Barry Stuppler and ANA have been dismissed.  Dkt. No. 150.

United States District Court
For the Northern District of California

In 2004, ANA and eBay formed the Coins Community Watch Program ("CCW"), which ANA described as "a collaborative effort among a team of lobby experts, the ANA, and eBay for the purpose of combating misrepresented or fraudulent listings involving coins and other numismatic items." *Id.* ¶ 40.   In the eBay forum announcing the program, the CCW is described as "a cooperative effort between the CCW team of experts, the American Numismatic Association (ANA), and eBay to combat misrepresented listings in the Coins category." *Id.* ¶ 41.  Similar to their allegations against the  Internet Rules Committee, plaintiffs allege that the CCW was merely "an illegal agreement between defendants to negatively affect competition in the relevant market and to restrain trade therein." *Id.* ¶ 42.  In fact, the CCW consisted of the same members as the earlier Internet Rules Committee.  *Id.*

Next in 2006, PNG and Stuppler, who is on PNG's Board of Directors and ANA's former president, conducted a survey of rare coin authentication and grading services where respondents were asked to evaluate eleven grading services based on several criteria, including grading and authentication accuracy ("Survey").  *Id.* ¶ 43.  But plaintiffs allege that "the false and damaging results of the Survey were manipulated by PNG and Stuppler" and that "smaller more economical coin grading services like plaintiff UGS were deliberately excluded by defendants from the survey." *Id.*  ¶ 43.

Finally in 2007, eBay implemented the Counterfeit Currency and Stamps Policy ("Policy"), which permits only coins that have been graded by one of the five grading services to be listed on eBay as "certified" coins.  *Id.*  ¶ 50.  Publicly, eBay announced that the Policy was an effort to "combat misrepresented or fraudulent listings involving coins and other numismatic items."  *Id.* ¶ 59.  However, plaintiffs allege that defendants "used the pretext of the misleading results of the PNG survey and the agenda of the CCW seminars to wrongfully over-represent the quality" of their services and thus inflate the prices of coins graded by one of the five approved graders.  *Id.*  ¶ 49. Moreover, eBay sent emails to certain sellers, informing those sellers that their own listings had been removed for violating eBay's Policy.   TAC ¶ 71.  The sellers violated eBay's Policy by posting

**United States District Court**
For the Northern District of California

1    their listings as "certified" when in fact they were not certified by one of the five eBay approved

2    coin graders.

3         Plaintiffs' thirteen claims for relief in the TAC can be divided into six general categories: (1)

4    § 1 Sherman Act violations, including conspiracy to restrain trade, tying, boycott, and price fixing;

5    (2) § 2 Sherman Act violations, including abuse of monopoly power, maintenance of monopoly

6    power, and attempted monopolization; (3) state law antitrust violations under the Donnelly Act

7    (New York) and the Cartwright Act (California); (4) trade libel; (5) unfair competition in violation

8    of Cal. Bus. & Prof. Code § 17200; and (6) tortious interference with economic relations.  As noted,

9    defendants eBay and PNG have filed separate motions to dismiss as to all claims.

10        The claims of the TAC are brought on behalf of plaintiffs and various classes.  These classes

11   are: (1) coin grading companies not authorized under the eBay Policy; (2) companies and

12   individuals who purchased coins graded by eBay's five authorized graders; (3) coin sellers who are

13   in possession of coin inventories graded by companies other than the five authorized under the eBay

14   Policy; (4) companies and individuals who attempted to list coins as "certified" which had been

15   graded by companies other than eBay's five authorized graders and whose listings were removed by

16   eBay for violating the eBay Policy; and (5) all companies and individuals who have bought and/or

17   sold coins on eBay and have paid higher commissions to eBay as a result of the eBay Policy.  TAC

18   ¶¶ 113-162.  Only Sherman Act § 2 claims are brought on behalf of Class 5.

## II.  ANALYSIS

### A.    Standard of Review

21        A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal

22   sufficiency of the claims in the complaint.  To survive a motion to dismiss, a complaint must contain

23   sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

24   *Ashcroft v. Iqbal*, 129 S. Ct. 1939, 1949, 173 L. Ed. 2d 868 (2009).  A claim has facial plausibility

25   when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

26   the defendant is liable for the misconduct alleged.  *Id.*  And in antitrust actions, "[f]actual allegations

27   must be enough to raise a right to relief above the speculative level[.]" *Rick-Mik Enters. Inc. v.*

28

**United States District Court**
For the Northern District of California

*Equilon Enters., LLC*, 532 F.3d 963, 970 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). The Ninth Circuit noted that "at least for the purposes of adequate pleading in anti-trust cases, the Court specifically abrogated the usual 'notice pleading' rule." *Id.* at 971 (quotation omitted). In fact, *Twombly* specifically requires plaintiffs to allege enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. For the purposes of a motion to dismiss, a court must take as true all of the factual allegations in the complaint. But the court is not bound to accept as true legal conclusions couched as factual allegations. *Id.* at 556.

In ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). However, a court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *Id.* at 453-54. The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Therefore, this court accepts as true all material allegations in the complaint and in the documents attached to the TAC, as well as reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

**B.      Claim 1: *Per Se* Antitrust Conspiracy to Restrain Trade**

Claim 1 of the TAC  alleges an unlawful *per se* conspiracy between eBay, ANA, Stuppler, and PNG. *Id.* ¶ 168. Claim 1 is brought on behalf of Class 1 (coin grading companies not authorized under the eBay Policy), Class 2 (companies and individuals who purchased coins graded by one of eBay's five authorized graders), and Class 3 (coin sellers who are in possession of coin inventories graded by companies other than one of the five authorized under the eBay Policy). Plaintiffs allege that the Internet Rules Committee, the CCW, and eBay were part of a conspiracy "intended to harm and unreasonably restrain competition in all the anti-trust relevant markets referenced." *Id.* ¶ 170.

**United States District Court**
For the Northern District of California

To prevail under § 1 of the Sherman Act, 15 U.S.C. § 1, a plaintiff must plead three elements: "(1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged (i.e., 'antitrust injury')." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 811 (9th Cir. 1988).

### 1.   *Per Se* Analysis

Claim 1 alleges a *per se* violation of Sherman Act § 1.  Courts generally recognize that "[s]ome practices . . . are so likely to interfere with competition that they violate the Sherman Act *per se*." *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1410 (9th Cir. 1991).  In these cases, plaintiffs "do not require evidence of any actual effects on competition because we consider the potential for harm to be so clear and so great." *Id.*  Only certain types of § 1 claims are illegal *per se*.  Examples include: "horizontal price-fixing, division of markets, and certain tying arrangements.  In addition, some, but not all, boycotts are considered illegal *per se*." *Id.* (citations omitted).  If alleged conduct is not a *per se* antitrust violation, then it is evaluated under the rule of reason.  Under this test, courts "must analyze the degree of harm to competition along with any justifications or pro-competitive effects to determine whether the practice is unreasonable on balance." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1410 (9th Cir. 1991) (quoting *Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988).  Unlike a *per se* violation, "[t]he focus is on the actual effects that the challenged restraint has had on competition in a relevant market." *Id.*

Plaintiffs argue that industry insiders and market makers have used the self-regulatory process to disadvantage new rivals or new forms of competition and as such, courts condemn them as *per se* unfair acts.  In contrast, defendants argue that a *per se* approach generally only applies to certain "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *N'west Wholesale Stationers, Inc. v. Pac. Stationery and Printing Co.*, 472 U.S. 284, 289 (1985).

1   Defendants also argue that the alleged antitrust acts in this case all have redeeming virtues oriented

2   toward creating "a safer online auction service platform."  TAC ¶ 208.  Information in the exhibits

3   attached to the TAC further suggests that, at least to some, the Policy has redeeming value.  *See* Exh.

4   E, eBay Discussion Board at pg. 2 ("I applaud [eB]ay and the ANA for their action. [I]t is a long

5   overdue first step.").

6        The court agrees with defendants.  Simply put, defendants' actions could be consistent with

7   an unlawful agreement, but they are equally consistent with lawful conduct, namely the provision of

8   a safer online auction service platform for graded coins.

9        Plaintiffs rely on *National Soc. of Professional Engineers v. United States.*, 435 U.S. 679

10  (1978).  In that case, an association of engineers attempted to justify a competitive bidding ban by

11  claiming that it would "tempt individual engineers to do inferior work with consequent risk to public

12  safety and health." *Id.* at 693.  The Supreme Court did not accept this argument, and the ban was

13  struck down under the Sherman Act.  Notably, the Supreme Court did not explicitly use a *per se*

14  analysis to reach this conclusion, but rather, held that the restraint could not be justified under the

15  rule of reason.  At its core, *Professional Engineers* does not demand a *per se* analysis in this case.

16  There are other differences as well.  For example, the eBay Policy does not ban plaintiffs' services.

17  Rather, the policy only regulates what can be posted as "certified."  Indeed, it is not of the same

18  "pernicious effect" as an absolute ban on competition.

19       Plaintiffs also rely on *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*, 364 U.S. 656

20  (1961).  In that case, an association of gas heater manufacturers, pipeline companies, and utilities

21  acted together to exclude gas appliances judged to be unsafe by refusing to provide gas to customers

22  using the unapproved appliances.  *Id.* at 658-59.  Applying a *per se* analysis, the Supreme Court held

23  that "[a]s to these classes of restraints . . . Congress has determined its own criteria of public harm

24  and it is not for the courts to decide whether in an individual case injury has occurred." *Id.* at 660.

25  Unlike the gas heater manufacturer in *Radiant Burners*, plaintiffs are not completely excluded.  Even

26  though the Policy imposes certain restrictions, plaintiffs do not allege that their services are entirely

27  prohibited from eBay or other markets.  *See* TAC Exh. I ("If the coin has not been certified by one

28

ORDER GRANTING MOTIONS TO DISMISS AND MOTION TO STRIKE—No. C-09-2755 RMW
JLR                                                                7

of the authorized grading companies, the coin may only be listed as raw or uncertified."). Moreover, *Radiant Burners* involved a boycott designed to injure *competitors*. But PNG and eBay are not in the coin grading business. Plaintiffs also argue that like the arbitrary exclusion in *Radiant Burners*, the Policy was based on the unfair Survey and should therefore be subject to *per se* analysis. However, the Supreme Court has held that "the absence of procedural safeguards can in no sense determine the antitrust analysis." *N'west Wholesale Stationers, Inc. v. Pac. Stationery and Printing Co.*, 472 U.S. 284, 293 (1985) (applying a rule of reason analysis where a cooperative buying agency expelled plaintiff without providing any procedural means for challenging the expulsion).

The *per se* approach is not as broad as plaintiffs contend. Indeed, the Supreme Court has noted that the Sherman Act "cannot mean what it says. The statute says that 'every' contract that restrains trade is unlawful. But, as Mr. Justice Brandeis perceptively noted, restraint is the very essence of every contract . . . ." *Professional Engineers*, 435 U.S. 679, 687-88. As such, the rule of reason "has been used to give the Act both flexibility and definition, and its central principle of antitrust analysis has remained constant." Because defendants' activities are not of the kind that lack any redeeming value and do not completely exclude, a *per se* analysis is unwarranted. Accordingly, plaintiffs' Claim 1 is dismissed with prejudice insofar as it advocates for a *per se* analysis. *See Cohlmia v. Ardent Health Servs.*, LLC, 448 F. Supp. 2d 1253, 1268 (N.D. Okla. 2006) (dismissing *per se* claims and noting that as a consequence, § 1 claims "must be accompanied by some showing of anticompetitive effect, pursuant to the rule of reason analysis the Court must perform"). Plaintiffs have had four opportunities to allege a *per se* violation, but have failed to do so.

### 2.    Harm to Competition and Economic Sense

Under the rule of reason, the court must analyze the degree of harm to competition along with any justifications or pro-competitive effects to determine whether the practice is unreasonable on balance. Defendants argue that plaintiffs have failed to establish a plausible claim of harm to competition that makes "economic sense." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response, plaintiffs argue that the determination of whether their claims

**United States District Court**
For the Northern District of California

1  make economic sense under *Matsushita* cannot be made at the pleading stage. However, the court in

2  *ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213 (D.D.C. 2005) dismissed the

3  coin grader's antitrust claims against ANA and PNG because they made no economic sense,

4  specifically noting that none of the defendants was a competitor of the plaintiff, a coin grading

5  company. In fact, several courts have applied *Matsushita* in analyzing motions to dismiss.[2]

6        Here, plaintiffs allege that eBay's adoption of the Policy caused the five approved

7  independent coin graders to raise the prices of their services, which were then passed on by coin

8  sellers to coin buyers, resulting in higher commissions for eBay. However, plaintiffs fail to allege

9  that the five authorized coin graders actually charged more than the smaller grading companies for

10  their services, or that the five authorized coin graders raised their prices for grading coins after the

11  Policy was adopted.

12        Furthermore, plaintiffs do not allege that eBay received higher commissions as a result of the

13  Policy. While plaintiffs do not allege that eBay sells coins, plaintiffs do allege that eBay provides a

14  market for others to sell coins and that eBay receives a commission for each sale on its website.

15  According to plaintiffs, this is the driving incentive for eBay to engage in a conspiracy to exclude

16  unauthorized graders and fix prices. But plaintiffs do not allege that the coin sellers actually pass

17  along their allegedly "fixed" coin grading costs to coin purchasers, or that the cost of certified coins

18  on eBay actually increased after the Policy was enacted.

19        Plaintiffs also fail to allege how the Survey was false and damaging. Instead, plaintiffs only

20  allege that:

21        [t]he false and damaging results of the survey were manipulated by Defendants PNG
      and Stuppler. Specifically, smaller more economical coin grading services like

22        Plaintiff UGS were deliberately excluded by Defendants from the survey by
      Defendants PNG and Stuppler notwithstanding Defendants' clear knowledge that such

23

24  [2]  *See, e.g.*, *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)
(affirming Rule 12(b)(6) dismissal where complaint alleged "highly implausible" conspiracy);

25  *Brunson Communications., Inc. v. Arbitron, Inc.*, 239 F. Supp.2d 550, 563-64 (E.D. Penn. 2002)
(concluding that "the Amended Complaint fails to sufficiently allege concerted activity for the

26  simple reason that the supposed conspiracy 'makes no economic sense.'"); *United Magazine Co. v.
Murdoch Mag. Distrib.*, 146 F. Supp. 2d 385, 402 (S.D.N.Y. 2001) (holding that because "plaintiffs'

27  alleged conspiracy to engage in predatory pricing is entirely unnecessary and makes no economic
sense, plaintiffs fail to state a claim under Section 1").

28

1   exclusion would have an adverse economic effect on such companies and their customers.

2   TAC ¶ 43. However, plaintiffs do not allege how excluding smaller coin grading services from the

3   Survey amounts to manipulation or bad faith. Also, plaintiffs do not allege how smaller grading

4   services were excluded from the Survey.

5      Without alleging the foregoing facts, plaintiffs have failed to establish a plausible claim of

6   harm to competition that makes "economic sense." Accordingly, the portion of Claim 1 remaining

7   under the rule of reason is dismissed without prejudice. Plaintiffs must allege facts supporting a

8   plausible claim of harm to competition.

9      **C.    Claim 2: *Per Se* and Unreasonable Tying**

10     In Claim 2, plaintiffs allege that the eBay Policy constitutes a *per se* "tying arrangement"

11  where the tying product is "the provision of a platform for online auctions of certified coins" and the

12  "tied" product is the "provision of coin grading services." TAC ¶¶ 174-183. Claim 2 is brought on

13  behalf of Class 1 (coin grading companies not authorized under the eBay Policy), Class 2

14  (companies and individuals who purchased coins graded by eBay's five authorized graders), and

15  Class 3 (coin sellers who are in possession of coin inventories graded by companies other than the

16  five authorized under the eBay Policy).

17     For the reasons stated above, plaintiffs' *per se* tying claim is dismissed with prejudice.

18  However, plaintiffs' unreasonable tying claim is dismissed without prejudice. Under the rule of

19  reason, plaintiffs must allege facts supporting a plausible claim of harm to competition.

20     **D.    Claim 3: Price Fixing**

21     In Claim 3, plaintiffs allege damages under § 4 of the Clayton Act based on allegations that

22  defendants conspired to fix the prices of "certified" coins in violation of § 1 of the Sherman Act.

23  TAC ¶¶ 185-189. Specifically, plaintiffs allege a horizontal price fixing scheme by defendants to fix

24  the prices of coin grading services, which in turn, allowed them to fix the price of "certified" coins.

25  Claim 3 is brought on behalf of Class 2 (companies and individuals who purchased coins graded by

26  eBay's five authorized graders).

27

28

ORDER GRANTING MOTIONS TO DISMISS AND MOTION TO STRIKE—No. C-09-2755 RMW
JLR                                                                10

United States District Court
For the Northern District of California

1    Claim 3 is dismissed because plaintiffs are required to plead that the parties engaged in the

2    horizontal price-fixing scheme are competitors of each other.  *See Rick-Mik Enters. v. Equilon*

3    *Enters., LLC*, 532 F.3d 963, 976 (9th Cir. 2008) (affirming a dismissal of a price fixing claim

4    because plaintiff could not state a claim under a theory of  horizontal price fixing where the

5    defendants did not compete).  Plaintiffs do not allege that defendants eBay and PNG are competitors

6    of each other, nor do they cite a single case allowing a claim of horizontal price fixing to proceed

7    where defendants are not competitors of each other.  For this reason, Claim 3 is dismissed with

8    prejudice.

9    **E.    Claim 4: *Per Se* Boycott**

10    In Claim 4, plaintiffs allege that defendants engaged in a *per se* unlawful group boycott of (1)

11    the non-Ebay approved coin grading companies and (2) coin dealers who tried to list coins graded by

12    non-authorized coin graders as "certified" in violation of the eBay Policy.  Plaintiffs bring this claim

13    on behalf of Class 1 (coin grading companies not authorized under the eBay Policy) and Class 3

14    (coin sellers who are in possession of coin inventories graded by companies other than the five

15    authorized under the eBay Policy).  For the reasons stated above, Claim 4 is dismissed with

16    prejudice because it is brought under a *per se* theory.

17    Plaintiffs' *per se* boycott claim also fails because defendants PNG and eBay are not

18    competitors.  *See Nynex Corp. v. Discon, Inc.*, 525 U.S. 128, 135, (1998) ("[P]recedent limits the *per*

19    *se* rule in the boycott context to cases involving horizontal agreements among direct competitors.").

20    For this reason also, Claim 4 is dismissed with prejudice.

21    **F.    Claims 5 and 6:  Sherman Act § 2**

22    Plaintiffs also allege that eBay's Policy violates § 2 of the Sherman Act.  Specifically, Claim

23    5 alleges that eBay abused its dominant position and willfully maintained monopoly power in the

24    market for online auction services.  TAC ¶ 206.  In Claim 6, plaintiffs allege that eBay attempted to

25    monopolize the market for the provision of online auction services in further violation of § 2 of the

26    Sherman Act.  TAC ¶ 214-218.  Both claims are brought on behalf of Class 5 (all companies and

27

28

**United States District Court**
For the Northern District of California

individuals who have bought and/or sold coins on eBay and have paid higher commissions to eBay as a result of the eBay Policy).

"To prevail on a claim of monopolization under Section 2 of the Sherman Act, a plaintiff must demonstrate: '(1) [p]ossession of monopoly power in the relevant [market or] submarket; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury.'" *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997) (citing *Pac. Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992)).  Similarly, to prevail on a claim of attempted monopolization under Sherman Act § 2, "a plaintiff must demonstrate four elements: (1) specific intent to control prices or destroy competition; (2) predatory or anti-competitive conduct directed toward accomplishing that purpose; (3) a dangerous probability of success; and (4) causal antitrust injury." *Id.* at 1477 (citing *Rebel Oil Co., v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995)).  Both theories of liability require causal antitrust injury.  Antitrust injury is injury "of the type the antitrust laws were intended to prevent," *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 372 (2003), which means harm to the process of competition and consumer welfare, not harm to individual competitors.  *Cascade Health Solutions v. Peacehealth*, 515 F.3d 883, 901 (9th Cir. 2008).

Plaintiffs allege, and defendant eBay does not dispute, that eBay has "monopoly power in the market for the provision of online auction services."  TAC ¶ 205.  Plaintiffs further allege that "eBay's Stamps and Counterfeit Policy protects Defendant eBay's monopoly power by ensuring that no competitor can make inroads on its market position by offering a safer online action service platform to any existing or potential customers."  *Id.* ¶ 208.  Plaintiffs' allegation can be interpreted in one of two ways.  Under one interpretation, plaintiffs appear to allege that the Policy prohibits other online auction providers from offering a platform that is safer than eBay's.  Alternatively, plaintiffs may be alleging that eBay has protected its monopoly power by making its services safer.

Neither of these interpretations supports a causal antitrust injury.  Plaintiffs' reasoning is hard to follow.  Plaintiffs allege no facts supporting the conclusion that competition among online auction services has been harmed by the Policy thus resulting in antitrust injury to the members of Class 5.

For example, plaintiffs do not explain why other online marketplaces are prevented from adopting similar practices to that of eBay, or how eBays' purported effort to boost public confidence in coins sold through its auction site results in antitrust injury. Even more, plaintiffs do not allege that the Policy prevents other online marketplaces from adopting a similar policy. Indeed, it is an "uncontroversial proposition that product improvement by itself does not violate Section 2, even if it is performed by a monopolist and harms competitors as a result." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 999-1000 (9th Cir. 2010). Plaintiffs do allege that users of eBay "cannot easily turn away to use other auction services due to the lock-in effect." TAC ¶ 86. The "lock-in effect," according to plaintiffs, locks in eBay users on a long term basis because it takes time for eBay users to learn to use eBay as an auction service." *Id.* It does not seem plausible that a user of e-Bay's online service would continue to use that service despite the availability of a comparable less expensive one merely because it had previously taken time to learn how to use eBay's service.

eBay's Policy could be described generally as eBay's refusal to deal with coin grading companies who attempt to list coins as "certified" although they have not been so designated under eBays' Policy. But a refusal to deal by itself cannot establish an antitrust injury. In fact, the Supreme Court has held that, "[a]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Communs.*, Inc., 129 S. Ct. 1109, 1118 (U.S. 2009). At bottom, plaintiffs do not explain how eBay's actions *on its own website* can reduce consumers' choices or diminish the quality of their experience on *other* auction websites and thus cause antitrust injury. Because plaintiffs fail to allege antitrust injury, Claims 5 and 6 are dismissed without prejudice.

### G.   Claim 7: Donnelly Act

Plaintiffs' Donnelly Act, N.Y. Gen. Bus. Law § 340 allegations in Claim 7 are derivative of plaintiffs' Sherman Act claims and therefore "succeed or fail with its Sherman Act claims." *Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 577 (S.D.N.Y. 2007). Since some of plaintiffs'

United States District Court
For the Northern District of California

1   Sherman Act claims are dismissed without prejudice, Claim 7 is also dismissed with without

2   prejudice.

3   ///

4   ///

5   **H.      Claims 8 and 9: Trade Libel**

6       In Claims 8 and 9, plaintiffs allege that the defendants conspired to commit, and

7   subsequently committed, trade libel by sending emails to coin sellers, informing those sellers that

8   their own listings had been removed for violating eBay's Policy.  TAC ¶ 235.[3]  Both claims are

9   brought on behalf of Class 1 (coin grading companies not authorized under the eBay Policy) and

10  Class 4 (companies and individuals who attempted to list coins graded by companies other than

11  eBay's five authorized graders and whose listings were removed by eBay for violating the eBay

12  Policy).  The sellers violated eBay's Policy by posting their listings as "certified" when in fact they

13  were not certified by one of the five eBay approved coin graders.[4]

14      "To state a claim for trade libel, the plaintiff must allege that the defendant published a

15  statement; the statement tended to disparage the plaintiff's product or property; the statement was

16  provably false; the defendant acted with knowledge that the statement was false or with reckless

17  disregard for its falsity; and the statement caused specific pecuniary damage to the plaintiff." *Tuck*

18  *Beckstoffer Wines LLC v. Ultimate Distribs.*, 682 F. Supp. 2d 1003, 1021 (N.D. Cal. 2010).

19  Plaintiffs are also required to plead special damages:

20  _____

21  [3]  Plaintiffs' trade libel claim is now based entirely on eBay's emails.  Despite this fact, plaintiffs
    oppose eBay's motion with respect to trade libel and tortious interference claims in their Opposition
22  to PNG's motion to dismiss, allowing them to file a 35 page opposition to eBay's motion, despite this
    court's two prior orders requiring that they comply with the local rules regarding the length of their
23  opposition.  Given plaintiffs' failure to comply with the local rules, the court ignores this portion of
    the plaintiffs PNG Opposition regarding eBay's Motion (PNG Opp. at 15-25).  But even if the court
24  were to consider these arguments, they are insufficient to overcome the defendants motion to
    dismiss.

25  [4]  *See* Exh. D attached to TAC.  The subject line of the email reads "eBay Listing Removed:
    Counterfeit Currency and Stamps."  The email also states that the listing was removed "because it
26  violated the eBay Currency and Stamps policy.  We notified members who placed bids on the items
    that the listing has been canceled."  The email goes on to state that "[i]f the coin has not been
27  certified by one of the authorized grading companies, the coin may only be listed as raw or
    uncertified."

28

ORDER GRANTING MOTIONS TO DISMISS AND MOTION TO STRIKE—No. C-09-2755 RMW
JLR                                                    14

**United States District Court**
For the Northern District of California

> [the] plaintiff must prove in all cases that the publication has played a material and substantial part in inducing others not to deal with him, and that as a result he has suffered special damages . . . . It is nearly always held that it is not enough to show a general decline in his business resulting from the falsehood, even where no other cause for it is apparent, and that it is only the loss of specific sales that can be recovered. This means, in the usual case, that the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived.

*Erlich v. Etner*, 224 Cal. App. 2d 69, 73, 36 Cal. Rptr. 256 (1964).

Plaintiffs allege that after the enactment of eBay's Policy, UGS' coin grading sales dropped to zero and that customers refused to acquire coins graded by UGS. Plaintiffs also allege that, as result of defendants trade libel, UGS lost its customers and was deprived of its annual profit of $250,000.00. TAC ¶¶ 243-244. However, a general decline in plaintiffs' business is not sufficient. In this case, plaintiffs only allege damages "[a]s a direct and proximate result of the eBay Policy," not the purported libel contained in the emails. TAC ¶ 243. In other words, plaintiffs admit that coin sellers cannot list plaintiff UGS' coins as "certified" on eBay because of the Policy - not because of the emails. Plaintiffs fail to allege that the emails played "a material and substantial part in inducing others not to deal" with UGS. *Erlich*, 224 Cal.App.2d at 73.

In addition, plaintiffs cannot bypass the requirement to show special damages by now asserting trade libel *per se* because the TAC clearly alleges "common law trade libel." TAC ¶ 231. And even if plaintiffs had clearly pled trade libel *per se*, the claim would still fall short because trade libel *per se* is based on the common law of defamation and requires a "defamatory meaning . . . itself without the necessity of explanation or the pleading of extrinsic facts." *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 384-85 (1986). In this case, an extrinsic item (the Policy) is necessary to explain the alleged defamatory meaning of the email with respect to UGS. Accordingly, libel *per se* is inapplicable. Because plaintiffs are unable to show special damages, Claims 8 and 9 are dismissed with prejudice.

## I.     Claim 10: Cartwright Act

Plaintiffs' Cartwright Act, Cal. Bus. & Prof. Code § 16720 allegations in Claim 10 are also derivative of plaintiffs' Sherman Act claims. As with the Donnelly Act, it is well established that "[i]nterpretation of federal antitrust law is . . . applicable to the Cartwright Act." *Davis v. Pacific*

United States District Court
For the Northern District of California

1    *Bell*, 204 F. Supp. 2d 1236, 1243 (N.D. Cal. 2002) (citing *Chicago Title Insurance Co. v. Great*

2    *Western Financial Corp.*, 69 Cal.2d 305, 315, 70 Cal.Rptr. 849, 444 P.2d 481 (1968). Accordingly,

3    Claim 10 is dismissed without prejudice because some of plaintiffs' Sherman Act claims are also

4    dismissed without prejudice.

5            **J.      Claim 11: Unfair Competition Law**

6            Finally, the UCL, Cal. Bus. & Prof. Code § 17200 allegations in Claim 11 are also derivative

7    of plaintiffs' other claims. Courts have noted that the UCL's "unlawful" prong "borrows violations

8    of other laws . . . and makes those unlawful practices actionable under the UCL. Thus, a violation of

9    another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman*

10   *v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554, 62 Cal. Rptr. 3d 177 (2007) (quotation

11   and citation omitted). As a result, "where a plaintiff cannot state a claim under the 'borrowed' law, it

12   cannot state a UCL claim either." *Tuck Beckstoffer Wines LLC v. Ultimate Distribs.*, 682 F. Supp.

13   2d 1003, 1020 (N.D. Cal. 2010). In this case, some unfair acts alleged by plaintiffs have been

14   dismissed without prejudice. Therefore, this court dismisses Claim 11 without prejudice.

15           **K.      Claims 12 and 13: Tortious Interference Claims**

16           In Claims 12, plaintiffs allege tortious interference with UGS' "prospective economic

17   relationships with coin sellers trading certified coins in the online auction market" and "reasonable

18   probability of obtaining future economic benefit from offering coin grading services to the public at

19   large." TAC ¶¶ 263, 260. Similarly in Claim 13, plaintiffs allege that defendants interfered with

20   Komito and Kirichenko's "prospective economic relationships with consumers interested in

21   purchasing certified coins in the relevant market" and "reasonable probability of obtaining future

22   economic benefit from selling certified coins to the public at large." *Id.* ¶¶ 271, 269.

23           In order to state a claim for tortious interference with a prospective economic advantage,

24   plaintiffs must plead "(1) an economic relationship between the plaintiff and some third party, with

25   the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the

26   relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4)

27   actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by

28

the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

Notably, the TAC does not contain factual allegations identifying the existence of any specific economic relationships with identifiable third parties, which defendants knew about and intentionally disrupted through a wrongful act. The TAC does not mention a specific buyers' interest in purchasing coins from defendants, nor does it provide factual allegations suggesting that specific coin owners chose not to use UGS' services. To state a claim for intentional interference with prospective economic advantage, plaintiffs must plead facts showing that it is reasonably probable that they would have received some expected benefit had it not been for defendants' wrongful interference. *Westside Ctr. Assoc. v. Safeway Stores* 23, Inc., 42 Cal. App. 4th 507, 523 (1996). Without any identifiable prospective buyers, plaintiffs expectation of future business is "at most a hope for an economic relationship and a desire for future benefit." *Blank v. Kirwan*, 39 Cal. 3d 311, 331, 216 Cal. Rptr. 718, 703 P.2d 58 (1985). *See, e.g.*, *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2005 WL 832398, *9 (N.D. Cal. Mar. 30, 2005) (dismissing interference claim where allegation of "future and prospective sales" to "repeat customers" was "too speculative to support" such claims). Accordingly, Claims 12 and 13 are dismissed without prejudice. Plaintiffs must plead facts showing the existence of a specific economic relationships with identifiable third parties, which defendants knew about and intentionally disrupted through a wrongful act

### L.   Motion to Strike

Defendant eBay also moves to strike the Trubitsky Declaration (Docket No. 134-1) pursuant to Northern District of California Civil Local Rule 7-5(b). Because the Trubitsky Declaration contains numerous legal conclusions and arguments and lacks proper foundation, this court grants eBay's motion to strike.

### III.  ORDER

The court grants defendant eBay's motion to strike.

The court grants the motion to dismiss as follows:

United States District Court
For the Northern District of California

1.   Claims 1 and 2 are dismissed with prejudice insofar as they advocate for a *per se* analysis.  Claims 1 and 2 are dismissed without prejudice insofar as they advocate for a rule of reason analysis.

2.   Claims 3, 4, 8, and 9 are dismissed with prejudice.

3.   Claims 5, 6, 7, 10, 11, 12, and 13 are dismissed with twenty days leave to amend from the date of this order.

DATED:      3/8/2011

RONALD M. WHYTE
United States District Judge