**E-FILED on 1/9/2012**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNIVERSAL GRADING SERVICE, et al. <br><br> Plaintiffs, <br><br> v. <br><br> EBAY, INC., et al. <br><br> Defendants. | No. C-09-2755 RMW <br><br> ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE <br><br> **[Re Docket No. 155]** |

This action arises out of a policy enacted by defendant eBay, Inc. ("eBay") regarding the labeling of certain coins sold on its online auction website. On March 28, 2011, plaintiffs Universal Grading Service ("UGS"), John Callandrello ("Callandrello"), Joseph Komito ("Komito"), and Vadim Kirichenko ("Kirichenko") (collectively "plaintiffs") filed a Fourth Amended Complaint ("FAC") attempting to state claims under Sections 1 and 2 of the Sherman Act, state antitrust statutes, Cal. Bus. & Prof. Code section 17200, and the common law tort of interference with economic relations. eBay moves to dismiss under Fed. R. Civ. P. 12(b)(6). For the reasons below, the court grants the motion to dismiss with prejudice.

# I. BACKGROUND

## A.  Factual Background

eBay is the "world's largest provider of online auction services." FAC ¶ 19. eBay's website contains a forum for the purchase and sale of millions of items, including coins. *Id.* ¶ 6. According to the FAC, "on any given day, … eBay has more than one hundred fifty thousand U.S., world, and ancient coins listed for online auction." *Id.* ¶ 21. Under eBay's Counterfeit Currency and Stamps Policy (the "Certification Policy"), only coins that have been "graded" by one of five authorized grading services may be listed as "certified coins." *Id.* ¶ 38. Coins that have not been graded, or have been graded by a non-authorized grading service, may be sold on eBay, but may not be labeled "certified coins." *Id.* ¶ 166. As of the filing of the FAC, only about 0.3% of coins available on eBay were listed as "certified." *Id.*

UGS is in the business of grading coins, but is not one of the five services authorized by eBay to "certify" coins for sale on its website. *Id.* ¶ 2, 39. Callandrello is the president of UGS, as well as a shareholder in the company. *Id.* ¶ 3. Komito and Kirichenko are individual coin dealers who buy and sell coins within an alleged "online auctions market for certified coins," including through eBay's website. FAC ¶¶ 4-5.

eBay's Certification Policy has a complicated history. In or about 2001, the Professional Numismatists Guild ("PNG"), an organization of coin dealers and collectors, formed a group known as the "Internet Rules Committee." FAC ¶¶ 7, 8, 27. The Internet Rules Committee consisted of various "coin industry insiders," including Barry Stuppler ("Stuppler") in his capacity as then-governor and chairman of a non-profit trade organization called the American Numismatic Association ("ANA") Consumer Protection Committee. *Id.* ¶ 27. Plaintiffs allege that the "sole purpose" of the Internet Rules Committee was to "interfere with and obstruct the ability of smaller coin grading services," including plaintiff UGS, to participate in the "then burgeoning online auctions market for certified coins" by accusing plaintiffs of selling counterfeit coins and engaging in other fraudulent conduct. *Id.*

In or about 2004, the ANA and eBay formed the Coins Community Watch Group ("CCW"). *Id.* ¶ 28. The CCW consisted of largely the same members as the Internet Rules Committee. *Id.* ¶ 30. The ANA described the CCW as "a collaborative effort among a team of lobby experts, the ANA, and eBay for the purpose of combating misrepresented or fraudulent listings involving coins and other numismatic items." *Id.* ¶ 28.

In August 2004, eBay conducted a workshop called the Coins Community Watch Program. *Id.* ¶ 29. The eBay forum announcing the program explained that it was "a cooperative effort between the CCW team of experts, the ANA, and eBay to combat misrepresented listings in the Coins category." *Id.* ¶ 29. Under the CCW program, purported experts: (1) selectively reviewed coin listings for violations and submitted claims; (2) the ANA corroborated claims and attempted to resolve them with sellers; (3) unresolved issues were escalated to eBay for the appropriate remedy. *Id.* According to the FAC, the CCW program, like the Internet Rules Committee, was intended to negatively affect competition in the online market for certified coins. *Id.* ¶ 30.

In 2006, the PNG commissioned a survey of rare coin authentication and grading services (the "Survey"). *Id.* ¶ 31. Respondents were asked to evaluate eleven grading services based on several criteria, including grading and authentication accuracy. *Id.* ¶ 31. UGS was not one of the grading services included in the Survey. Plaintiffs allege that "the false and damaging results of the Survey were manipulated by PNG and Stuppler" and that "smaller more economical coin grading services like plaintiff UGS were deliberately excluded … from the survey." *Id.* ¶ 31.

In 2007, eBay implemented the Certification Policy, which allows only coins graded by one of five authorized grading services to be listed as "certified" in the auction forum. *Id.* ¶ 38. The selection of the authorized grading services was based on the results of the Survey. *Id.* Pursuant to the Certification Policy, coins graded by UGS and other non-authorized grading services may not be listed or sold on eBay as "certified" and are allegedly referred to by eBay as "counterfeit." *Id.* ¶ 39. In addition, eBay supposedly sent emails to dealers of coins graded by UGS with the subject line "eBay Listing Removed: Counterfeit Currency and Stamps." *Id.* ¶ 41.

ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE—No. C-09-2755 RMW
EDM                                                    3

Publicly, eBay announced that the Certification Policy was an effort to "combat misrepresented or fraudulent listings involving coins and other numismatic items." *Id.* ¶ 47. However, plaintiffs allege that the Certification Policy is in fact the result of a conspiracy between eBay, ANA, PNG and Stuppler to "raise the value of certified coins in the online auction market by restricting the online auction market to coins graded only by a handful of authorized graders." *Id.* ¶ 35. Plaintiffs further allege that coin buyers have been forced to pay "higher prices for certified coins than what they paid for identical coins prior to the enactment of the [Certification Policy]." *Id.* ¶ 43. Finally, plaintiffs allege that eBay "agreed to participate in this illegal scheme because it derives higher commissions from the sale of expensive coins." *Id.* ¶ 26.

## B. Procedural Background

Plaintiffs originally filed a class action complaint in the United States District Court for the Eastern District of New York on August 29, 2008. The complaint alleged largely the same claims asserted in the FAC on behalf of a number of proposed classes. Then-defendants eBay, ANA, PNG and Stuppler moved to dismiss plaintiffs' First Amended and Second Amended complaints under Rule 12(b)(6). On June 10, 2009, the District Court for the Eastern District of New York ordered the case transferred in its entirety to the Northern District of California. After the transfer, the parties stipulated to filing new motions to dismiss and to the filing of plaintiffs' Third Amended Complaint ("TAC"). eBay and PNG filed separate motions to dismiss the TAC. Stuppler and ANA were subsequently dismissed pursuant to a settlement agreement. *See* Dkt. No. 150.

On March 8, 2011, this court granted the motions to dismiss the TAC. Plaintiffs' antitrust claims were dismissed with prejudice to the extent they were based on alleged *per se* violations of the Sherman Act. The court also dismissed plaintiffs' trade libel claims with prejudice. However, the court granted plaintiffs leave to amend the complaint to plead facts supporting their Sherman Act § 1 claims under the rule of reason. *See Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1410 (9th Cir. 1991). The court also allowed plaintiffs to amend the complaint to allege: (1) antitrust injury with respect to their Sherman Act § 2 claims, (2) derivative Donnelly Act, Cartwright Act, and Unfair Competition Law claims, and (3) facts showing the existence of specific economic relationships with

ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE—No. C-09-2755 RMW
EDM                                              4

1  identifiable third parties which defendants knew about and intentionally disrupted through a
2  wrongful act, which would be necessary to support plaintiffs' tortious interference claims.
3       On March 28, 2011, plaintiffs filed their Fourth Amended Complaint ("FAC").  eBay moved
4  to dismiss on May 6, 2011.  On July 13, 2011, PNG reached a settlement agreement with plaintiffs,
5  leaving eBay as the lone defendant in this action.  *See* Dkt. No. 164.

**C.    The Fourth Amended Complaint**

The FAC's nine causes of action can be divided into five categories: (1) Section 1 Sherman Act claims, including conspiracy to restrain trade and unlawful tying; (2) Section 2 Sherman Act claims, including abuse of monopoly power, maintenance of monopoly power, and attempted monopolization; (3) state law antitrust claims under the Donnelly Act (New York) and the Cartwright Act (California); (4) unfair competition under Cal. Bus. & Prof. Code § 17200; and (5) tortious interference with economic relations.

The claims of the FAC are brought on behalf of plaintiffs and various classes.  These classes are: (1) coin grading companies not authorized under the Certification Policy; (2) companies and individuals who purchased "certified" coins after the implementation of the Certification Policy; (3) coin sellers who are in possession of coin inventories graded by companies other than the five authorized under the Certification Policy; (4) companies and individuals who attempted to list coins as "certified" which had been graded by non-authorized grading services and whose listings were removed by eBay for violating the Certification Policy; and (5) all companies and individuals who have bought and/or sold coins on eBay and have paid higher commissions to eBay as a result of the Certification Policy.  FAC ¶¶ 98-147.

**II. DISCUSSION**

**A.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1939, 1949 (2009).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  In antitrust actions, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 970 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).  The Ninth Circuit has noted that "at least for the purposes of adequate pleading in anti-trust cases, the Court specifically abrogated the usual 'notice pleading' rule." *Rick-Mik Enters. Inc.*, 532 F.3d at 971.  Indeed, antitrust plaintiffs are specifically required to allege enough facts to "nudge claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**B.     Claim 1: Antitrust Conspiracy to Restrain Trade**[1]

To prevail under Section 1 of the Sherman Act, 15 U.S.C. § 1, a plaintiff must plead: "(1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged (i.e., 'antitrust injury')." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 811 (9th Cir. 1988).  Under the rule of reason, the court must "analyze the degree of harm to competition along with any justifications or pro-competitive effects to determine whether the practice is unreasonable on balance." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1410 (9th Cir. 1991) (quoting *Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988)).  Unlike a *per se* violation, "[t]he focus [under the rule of reason] is on the actual effects that the challenged restraint has had on competition in a relevant market." *Id.*

The essence of plaintiffs' conspiracy claim is that eBay agreed with the ANA, Stuppler and PNG to limit the number of authorized graders in order to artificially raise the prices of grading services, which were then passed on by coin sellers to coin buyers, resulting in higher commissions for eBay.  While this is basically the same theory advanced in previous complaints, the FAC

---

[1]     Claim 1 is brought on behalf of Class 1 (coin grading companies not authorized under the Certification Policy), Class 2 (companies and individuals who purchased coins graded by one of eBay's five authorized graders), and Class 3 (coin sellers who are in possession of coin inventories graded by companies other than one of the five authorized under the Certification Policy).

includes a number of allegations that were absent from the TAC.  In particular, plaintiffs now allege that the five authorized coin graders charge more for their services than the non-authorized grading companies, and that the authorized coin graders raised their prices after the Certification Policy was adopted.  FAC ¶¶ 167-69.  Plaintiffs also allege that coin sellers pass the increased expense of grading services on to their customers and that the price of "certified coins" has increased since the implementation of the Certification Policy.  FAC ¶¶ 171, 172.

While the court is conscious of its duty to accept plaintiffs' allegations as true at the pleading stage, it remains convinced that the FAC, like the iterations that preceded it, fails to state a conspiracy claim under the Sherman Act.  First, the scheme described by plaintiffs simply does not make "economic sense."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (affirming Rule 12(b)(6) dismissal where complaint alleged "highly implausible" conspiracy); *Brunson Communications., Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 563-64 (E.D. Penn. 2002) (concluding that "the Amended Complaint fails to sufficiently allege concerted activity for the simple reason that the supposed conspiracy 'makes no economic sense.'"); *United Magazine Co. v. Murdoch Mag. Distrib.*, 146 F. Supp. 2d 385, 402 (S.D.N.Y. 2001) (holding that because "plaintiffs' alleged conspiracy to engage in predatory pricing is entirely unnecessary and makes no economic sense, plaintiffs fail to state a claim under Section 1").  Plaintiffs acknowledge that eBay is "consistently able to raise its commissions without losing its users."  FAC ¶ 200.  Thus, even assuming the convoluted arrangement depicted in the FAC could result in increased commissions to eBay, it would be far easier and more efficient for eBay to simply raise its fees for the sale of coins than to conspire with unrelated non-profit trade groups to develop a policy that *might* result in higher commissions.  *See, e.g.*, *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 146 F. Supp. 2d 385, 401-02 (S.D.N.Y. 2001) (dismissing Section 1 conspiracy claim as not making "economic sense" because the defendant could charge "supracompetitive prices" without engaging in the alleged conspiracy).  Plaintiffs respond to this argument by contending that the adoption of the Certification Policy was the "easiest and most politically safe way" for eBay to accomplish its

ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE—No. C-09-2755 RMW
EDM                                                            7

nefarious goal. Dkt. No. 159 at 6-7.  The court is not persuaded.  On top of the fact that the arrangement described by plaintiffs strikes the court as anything but "easy," the FAC contains no factual allegations supporting this assertion.  Instead, plaintiffs consistently emphasize that eBay is "solely concerned with its own profits," not the "politics" of its relationships with coin sellers.  Dkt. No. 159 at 7.

Furthermore, plaintiffs' theory is implausible because it is so highly unlikely to succeed.  As the FAC notes, of the 378,902 "coin" listings on eBay as of March 16, 2011, only 1,113, or roughly 0.3%, were listed as "certified."  FAC ¶ 166.  Thus, according to plaintiffs' logic, eBay's commissions have declined on the 99.7% of coins whose sale prices have decreased under the Certification Policy.  Plaintiffs in fact allege that the market for non-certified coins has been "permanently depressed," and that such coins now command only "a quarter of the price [of] graded coins."  *Id.* ¶¶ 170, 207.  An already improbable conspiracy to inflate commissions is not "nudged … across the line from conceivable to plausible" where the complaint on its face suggests that the perpetrator has lost money as a result of the agreement.  *Twombly*, 550 U.S. at 570.

In addition, the FAC itself demonstrates that the adoption of the Certification Policy was supported by pro-competitive justifications.  Plaintiffs concede that the stated intent of the policy was "to combat misrepresented or fraudulent listing involving coins and other numismatic items." FAC ¶ 47.  Further, the policy states on its face that "eBay wants to be a place that is safe for both buyers and sellers or stamps, coins, and paper money.  We have worked with various outside experts to develop guidelines and policies designed to protect eBay members."  Dkt. No. 155, Ex. 1 at 4.[2] As other courts have noted, standard-setting activity that "provides a better product carries with it an overriding justification."  *Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*, 851 F.2d 478, 487 (1st Cir. 1988) (Breyer, J.) (upholding defendant trade organization's promulgation of a standard for pipe-

---

[2] The court takes notice of the Certification Policy, which was attached as an exhibit to a declaration accompanying the motion to dismiss, under the incorporation by reference doctrine. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE—No. C-09-2755 RMW
EDM                                                                  8

fittings that was adopted by various private standard-setting bodies, as well as state and local plumbing code authorities).

Plaintiffs allege, however, that any purported justifications are "misleading" because "no further surveys of coin grading services are taking place and thus coin grading companies which offer perfectly respectable and legitimate grading services are precluded from competing with … eBay's chosen five." FAC ¶ 47. This statement suggests that plaintiffs' true grievance is not that eBay implemented a grading policy, but that certain grading services were excluded from the Survey upon which the policy was based. However, as the complaint makes clear, the Survey was commissioned and conducted PNG and Stuppler without the involvement of eBay. *See id.* ¶ 31. To the extent that UGS was wrongfully excluded from the Survey by its competitors, its gripe is with those parties, not with a website that appears to have simply relied on what it believed to be objective industry experts in attempting to reduce fraud. Furthermore, eBay has no obligation to deal with UGS or any other grading service, as long as it possesses "good faith, sufficient pro-competitive or business justifications for [its] actions." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp*, 614 F.3d 57, 82 (3d Cir. 2010) (upholding a rule imposed by a car racing sanctioning body requiring drivers to use a specific brand of tire because such a rule "creates more exciting races, ensures access to a uniform product, leads to increased safety, and lowers the costs of tires by eliminating the so-called 'tire wars.'"). Nor must eBay show that the Certification Policy is the *best* way to combat fraud, as long as it is reasonable. "Courts have recognized that firms must have broad discretion to make decisions based on their judgments of what is best for them and that business judgments should not be second-guessed even where the evidence concerning the rationality of the challenged activities might be subject to reasonable dispute." *7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090, 1101 (9th Cir. 1999). With reasonable, pro-competitive justifications for the Certification Policy evident from the face of the complaint and judicially noticeable documents, plaintiffs' claim cannot withstand scrutiny even on a motion to dismiss.

Finally, the FAC fails to show that the alleged scheme "produces significant anticompetitive effects within a relevant market" in which eBay has market power. *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063-64 (9th Cir. 2001) (internal citations and quotation marks omitted). Plaintiffs attempt to define the relevant market to include "any market which significantly depends on participation within online auctions, including the markets for coin grading and the market for certified coins." Dkt. No. 159 at 11. However, plaintiffs provide no authority supporting such an overbroad and amorphous market definition, which would theoretically encompass the market for every one of the millions of items sold through eBay. *See Tanaka*, 252 F.3d at 1063-64 (affirming dismissal of antitrust claims where plaintiff identified product market as "UCLA women's soccer program" but failed to allege any facts to support "conclusory" assertion that such market existed). Furthermore, even if the Certification Policy had the indirect effect of raising the price of the minute percentage of coins listed as "certified" on eBay[3] or advantaging certain participants in the market for coin grading services, plaintiffs have not plausibly shown that eBay—which does not sell or grade coins—has "market power" in either market. *See Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008) ("In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.'"). Plaintiffs' failure to identify a cognizable market in which eBay has market power is fatal to its conspiracy claim. *See Tanaka*, 252 F.3d at 1063 ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim."). Accordingly, the court GRANTS the motion to dismiss plaintiffs' Section 1 conspiracy claim.

**C.     Claim 2: Unreasonable Tying**[4]

---

[3]     Plaintiffs attempt to exaggerate the impact of eBay's conduct by alleging that the "broad based" rare coin index demonstrated a "sharp increase" in rare coin prices around the time the Certification Policy was adopted. FAC ¶ 171. However, plaintiffs do not allege, nor does the court believe they could show, that any increase in the price of rare coins is the result of the Certification Policy rather than other factors. *See Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991) (noting that the plaintiff must show "the restraint has actually produced significant anti-competitive effects").

[4]     Claim 2 is brought on behalf of Class 1 (coin grading companies not authorized under the eBay Policy), Class 2 (companies and individuals who purchased coins graded by eBay's five authorized graders), and Class 3 (coin sellers who are in possession of coin inventories graded by companies other than the five authorized under the eBay Policy).

Plaintiffs' second claim alleges that the Certification Policy "artificially and illegally tied the provision of a platform for online auction of certified coins . . . to the provision of coin grading services." FAC ¶¶ 174-185. In their opposition brief, plaintiffs modify their position to argue that eBay ties the sale of certified coins (rather than the provision of an online auction platform) to the sale of coin grading services. More specifically, plaintiffs contend that pursuant to eBay's unlawful conduct, purchasers of certified coins are "indirectly" forced to pay for the cost of coin grading services. Dkt. No. 159 at 12.

"A tying arrangement exists when a *seller* conditions the sale of one product or service (the tying product or service) on the buyer's purchase of another product or service." *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1158 (9th Cir. 2001) (emphasis added). "The essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984). Here, plaintiffs do not allege that eBay sells the tying product (certified coins) or the tied product (coin grading services). The FAC does not indicate that eBay exercise "control" over the price, marketing or distribution of certified coins or coin grading services. Nor does eBay "force" individuals to purchase coin grading services in order to participate in the online coin market; only the 0.3% of coin sellers and buyers who *choose* to deal in "certified coins" are required to abide by the Certification Policy. *See N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 7 (1958) ("Where the buyer is free to take either product by itself there is no tying problem."). Such factors place plaintiffs' theory far outside the scope of a traditional tying claim.

Furthermore, plaintiffs have not shown that eBay obtained a "direct economic benefit" from the alleged tying arrangement. *See Tuolumne*, 236 F.3d at 1158 ("If the tying entity receives no economic benefit from the tie, then we can safely presume that it is not attempting to spread its power into the tied-product market, and we need not strike the arrangements down as an illegal tie under the antitrust laws.") (quoting *Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*, 880

F.2d 1514, 1517 (2d Cir. 1989)). Plaintiffs do not allege that eBay receives a portion of the supracompetitive profits earned by the authorized grading services or any other sort of payment from the sale of the tied product. At best, plaintiffs show that eBay *could* benefit from the alleged tie because the Certification Policy *indirectly* leads to increased commissions on the sale of coins. The court is doubtful whether such an indirect and uncertain benefit could give rise to a tying claim. *See CTUnify, Inc. v. Nortel Networks, Inc.*, 115 Fed. Appx. 831, 834-35 (6th Cir. 2004) (affirming dismissal of tying claim where plaintiff did not allege that defendant "received a portion of the profits" from sales of the tied product). Moreover, the Supreme Court has held that "indirect purchasers"—here, coin buyers indirectly "coerced" into buying coin grading services—cannot recover antitrust damages. *See Illinois Brick v. Illinois*, 431 U.S. 720, 736 (1977). Finally, under the rule of reason, the pro-competitive justifications for the adoption of the Certification Policy apply with equal force to counter plaintiffs' tying claim. *See Tuolumne*, 236 F.3d at 1158. The court therefore finds that plaintiffs have again failed to state a tying claim under the Sherman Act, and GRANTS the motion to dismiss plaintiffs' second cause of action.

**D.     Claims 3 and 4:  Sherman Act § 2**[5]

"To prevail on a claim of monopolization under Section 2 of the Sherman Act, a plaintiff must demonstrate: '(1) [p]ossession of monopoly power in the relevant [market or] submarket; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury.'" *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997) (citing *Pac. Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992)). Similarly, to prevail on a claim of attempted monopolization, a plaintiff must demonstrate: "(1) specific intent to control prices or destroy competition; (2) predatory or anti-competitive conduct directed toward accomplishing that purpose; (3) a dangerous probability of success; and (4) causal antitrust injury." *Id.* at 1477 (citing *Rebel Oil Co., v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995)).

---

[5]     Plaintiffs' Section 2 claims are brought on behalf of Class 5 (all companies and individuals who have bought and/or sold coins on eBay and have paid higher commissions to eBay as a result of the Certification Policy).

ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE—No. C-09-2755 RMW
EDM                                                          12

1    Both theories of liability require the plaintiff to show "antitrust injury." The Supreme Court
2 has defined antitrust injury as "injury of the type the antitrust laws were intended to prevent and that
3 flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat*,
4 429 U.S. 477, 489 (1977). More specifically, antitrust injury is harm to the "competitive process,"
5 rather than to individual competitors. *Cascade Health Solutions v. Peacehealth*, 515 F.3d 883, 901
6 (9th Cir. 2008).

7    Here, the basis of plaintiffs' Section 2 claims is that eBay is a monopolist in the "market for
8 the provision of online auction services." FAC ¶ 190. In its previous order, the court concluded that
9 the complaint failed to demonstrate "that competition among online auction services has been
10 harmed by the [Certification] Policy thus resulting in antitrust injury." Dkt. No. 151 at 12. As the
11 court noted, "plaintiffs do not explain how eBay's actions *on its own website* can reduce consumers'
12 choices or diminish the quality of their experience on *other* auction websites." *Id.* at 13 (emphasis in
13 original). That is, plaintiffs had failed to allege antitrust injury in the market in which eBay
14 allegedly has monopoly power.

15    Plaintiffs now argue that eBay's conduct has not harmed competition in the market for online
16 auction services, but rather in the markets for: (1) coin grading services; (2) non-certified coins; and
17 (3) certified coins. Dkt. No. 159 at 15-17. Plaintiffs do not allege that eBay has monopoly power in
18 any of the affected markets. As plaintiffs see it, because they are consumers of eBay's services
19 rather than competitors, they need not establish harm to competition in the monopolized market, as
20 long as they can show "detrimental effects to competition in three relevant antitrust markets which
21 flow from [eBay's] anticompetitive abuse." *Id.* at 21.

22    The court finds that plaintiffs' novel theory stretches the concept of antitrust injury too far.
23 Under Section 2, "the prohibited conduct must be directed toward *competitors* and must be intended
24 to injure competition. Such conduct must affect the relevant product market, that is, the 'area of
25 effective competition' between the defendant and plaintiff." *Intergraph Corp. v. Intel Corp.*, 195
26 F.3d 1346, 1353 (Fed. Cir. 1999) (emphasis added). Simply put, in order to be liable for inflicting
27 antitrust injury under Section 2, a defendant must compete in the affected market. *See Mercy-*
28

ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE—No. C-09-2755 RMW
EDM                                          13

*Peninsula Ambulance, Inc. v. County of San Mateo*, 791 F.2d 755 (9th Cir. 1986) (affirming dismissal of Section 2 claim against defendant who was not a competitor in the relevant market). Plaintiffs offer no authority for the proposition that alleged harm to competition in markets in which eBay is not a monopolist—indeed, markets in which eBay does not even compete—can give rise to liability under Section 2. Such a conclusion would subject eBay to Section 2 claims based on alleged competitive harms in the market for any of the "millions of items" sold through its website. FAC ¶ 19. Instead, plaintiffs cite only *J. Allen Ramey, M.D., Inc. v. Pacific Found. for Med. Care*, 999 F. Supp. 1355, 1360 (S.D. Cal. 1998), which at best stands for the proposition that courts may view claims of antitrust injury brought by competitors with more skepticism than those brought by consumers. But even if the Certification Policy has indirectly resulted in increased prices for consumers of certified coins, such harm is not cognizable under Section 2 because it does not stem from the type of activity that Section 2 was enacted to prevent: exclusionary conduct directed towards eBay's competitors. *See Mercy-Peninsula Ambulance, Inc.*, 791 F.2d at 759 ("The gravamen of a section 2 claim is the deliberate use of market power by a competitor to control price or exclude competition."). Accordingly, the court finds that the FAC fails to allege antitrust injury cognizable under Section 2 of the Sherman Act, and GRANTS the motion to dismiss plaintiffs' third and fourth claims.

### E.     Claim 5: Donnelly Act[6]

Plaintiffs' claim under the Donnelly Act, N.Y. Gen. Bus. Law § 340, is derivative of plaintiffs' Sherman Act claims and therefore "succeed or fail with its Sherman Act claims." *Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 577 (S.D.N.Y. 2007).   Because the Sherman Act claims are dismissed, claim 5 is also dismissed.

### F.     Claim 6: Cartwright Act

---

[6]     Claims 5, 6 and 7 are brought on behalf of Class 1 (coin grading companies not authorized under the Certification Policy), Class 2 (companies and individuals who purchased coins graded by one of eBay's five authorized graders), Class 3 (coin sellers who are in possession of coin inventories graded by companies other than one of the five authorized under the Certification Policy), and Class 4 (; (4) companies and individuals who attempted to list coins as "certified" which had been graded by non-authorized grading services and whose listings were removed by eBay for violating the Certification Policy).

ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE—No. C-09-2755 RMW
EDM                                                                 14

United States District Court
For the Northern District of California

Plaintiffs' allegations under the Cartwright Act, Cal. Bus. & Prof. Code § 16720, are also derivative of plaintiffs' Sherman Act claims. As with the Donnelly Act, it is well established that "[i]nterpretation of federal antitrust law is . . . applicable to the Cartwright Act." *Davis v. Pacific Bell*, 204 F. Supp. 2d 1236, 1243 (N.D. Cal. 2002) (citing *Chicago Title Insurance Co. v. Great Western Financial Corp.*, 69 Cal.2d 305, 315 (Cal. 1968). Accordingly, the sixth claim is dismissed.

**G.     Claim 7: Unfair Competition Law (UCL)**

The cause of action for unfair competition under Cal. Bus. & Prof. Code § 17200 is also dependent on plaintiffs' Sherman Act claims. Courts have noted that Section 17200's "unlawful" prong "borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL. Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007) (quotation and citation omitted). As a result, "where a plaintiff cannot state a claim under the 'borrowed' law, it cannot state a UCL claim either." *Tuck Beckstoffer Wines LLC v. Ultimate Distribs.*, 682 F. Supp. 2d 1003, 1020 (N.D. Cal. 2010). Because plaintiffs have failed to state a claim under the Sherman Act, claim 7 is dismissed.

**H.     Claims 8 and 9: Tortious Interference Claims**[7]

Plaintiffs' eighth claim asserts that by implementing the Certification Policy, eBay tortiously interfered with UGS' "prospective economic relationships with coin sellers trading certified coins in the relevant market." FAC ¶ 237. Similarly, plaintiffs ninth claim alleges that eBay interfered with Komito and Kirichenko's "prospective economic relationships with consumers interested in purchasing certified coins in the relevant market." *Id.* ¶ 248.

In order to state a claim for tortious interference with prospective economic advantage, plaintiffs must plead "(1) an economic relationship between the plaintiff and some third party, with

---

[7]     Claim 8 is brought on behalf of Class 1 (coin grading companies not authorized under the Certification Policy). Claim 9 is brought on behalf of Class 3 (coin sellers who are in possession of coin inventories graded by companies other than one of the five authorized under the Certification Policy), and Class 4 (companies and individuals who attempted to list coins as "certified" which had been graded by non-authorized grading services and whose listings were removed by eBay for violating the Certification Policy).

ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE—No. C-09-2755 RMW
EDM                                                                 15

the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). The act causing disruption of the economic relationship must be "wrongful." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008)

The court previously dismissed these claims because plaintiffs failed to "plead facts showing the existence of a specific economic relationship with identifiable third parties, which defendants knew about and intentionally disrupted through a wrongful act." Dkt. No. 151 at 17. In the FAC, plaintiffs name a number of specific former clients of UGS, Komito and Kirichenko who "would have continued doing business with [plaintiffs] but for the implementation of [the Certification Policy." Dkt. No. 159 at 24. Nevertheless, plaintiffs' claims once again fail because they have not shown that any alleged disruption is the result of a "wrongful" act. An act is wrongful if it is "unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Google Inc. v. American Blind & Wallpaper Factory, Inc.*, No. 03-05340, 2005 WL 832398, at *8 n.32 (N.D. Cal. March 30, 2005) (citing *Korea Supply Co.*, 131 Cal.Rptr.2d 29). Plaintiffs argue that the implementation of the Certification Policy is "wrongful" because it violates the Sherman Act. Dkt. No. 159 at 25. However, as discussed above, the court finds that eBay's conduct, as alleged in the FAC, does not run afoul of federal or state law. The implementation of the Certification Policy therefore cannot serve as the basis for plaintiffs' tort claims. Accordingly, the court GRANTS the motion to dismiss plaintiffs' eighth and ninth claims.

## I.      Leave to Amend

Dismissal with prejudice is appropriate where it is clear that the complaint could not be saved by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Where the plaintiff has previously filed an amended complaint, "the district court's discretion to deny leave to amend is 'particularly broad.'" *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (citing *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002)).

At this point, plaintiffs have had four opportunities to amend their complaint over the course of more than two years of litigation. This court has already considered their claims once, and continues to find each insufficient to survive a motion to dismiss. The court therefore concludes that the complaint cannot be saved by amendment, and grants eBay's motion to dismiss with prejudice.

### III. ORDER

For the foregoing reasons, the court grants eBay's motion to dismiss all claims with prejudice.

DATED:     January 9, 2012

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge